**Maurice G. LUSSIER,**
**Plaintiff–Appellant,**

v.

**Richard DUGGER, as Secretary of the Department of Corrections of the State of Florida, Louie L. Wainwright, Paul J. Uhrig, G.S. Fortner, and Gilda H. Lambert, as Secretary of the Department of Administration of the State of Florida, Defendants–Appellees.**

No. 89–3354.

United States Court of Appeals, Eleventh Circuit.

July 2, 1990.

---

21. *See Lomelo v. United States,* 891 F.2d 1512 (11th Cir.1990).

Jawdet I. Rubaii, S. Noel Meador, Clearwater, Fla., for plaintiff-appellant.

Lynda Quillen, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendants-appellees.

Before KRAVITCH and JOHNSON, Circuit Judges, and KAUFMAN *, Senior District Judge.

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

FRANK A. KAUFMAN, Senior District Judge:

On July 21, 1986, plaintiff, Maurice G. Lussier, a dentist formerly employed by the Department of Corrections of the State of Florida (the Department), instituted this case alleging that various officials of the State of Florida discriminated against him because of a handicap, in violation of the federal Rehabilitation Act, 29 U.S.C. § 794 (§ 794), and also of 42 U.S.C. § 1983 (§ 1983). After the district court granted summary judgment for defendants and denied plaintiff's motion for reconsideration, plaintiff appealed. For reasons stated in this opinion, we affirm in part, reverse in part and remand for further proceedings.

Lussier was employed as a dentist with the Department at the latter's Avon Park Correctional Institution (Avon) from April, 1979 to August, 1983. Although not a fully licensed dentist in Florida, Lussier was licensed in Massachusetts and was allowed to render general dentistry services to Avon's inmate population pursuant to a special license issued by the State of Florida.

In February, 1982, Lussier was diagnosed as having a contagious type of hepatitis disease. Because of that illness, he was hospitalized and unable to work from February, 1982 to May, 1982. Upon release from the hospital, Lussier resumed his duties at the correctional institution. By mid-June, 1982, however, he was unable to work full-time due to a recurrence of the hepatitis, and began to work only mornings. In July, 1982, he was re-admitted to the hospital with a diagnosis of chronic active hepatitis.

In October, 1982, Lussier attempted a second time to return to full-time work. However, he was unable to handle a full-time workload and, once more, began to work only mornings. In February, 1983, citing recent research with regard to the transmissible nature of hepatitis between dentists and patients, Lussier stopped practicing dentistry altogether. From May, 1983 to June, 1983, Lussier worked at Avon one day per month and was then placed on compulsory disability leave by that correctional institution.

In late July, 1983, defendant G.S. Fortner, Avon's superintendent, terminated Lussier's employment because of the latter's chronic hepatitis condition. Lussier thereupon filed for worker's compensation and disability retirement benefits. While administrative proceedings concerning those benefits were pending in the summer of 1985,[1] Lussier had seemingly achieved full recovery and sought to return to work at Avon. Lussier notified the Dental Executive Director of the Department, defendant Paul J. Uhrig, of this recovery and requested re-employment. In response, Dr. Uhrig informed Lussier that all of the Department's dental positions were filled at that time and declined to rehire him; however, Dr. Uhrig did forward to Lussier an employment application. Lussier completed and submitted the application but was never offered re-employment by the Department.

The extent to which Lussier, after July, 1983, pursued efforts to obtain further employment with the Department, and the Department's response to such efforts, are in significant factual dispute. Lussier insists that he filed a series of applications for dental and non-dental positions after the summer of 1985, and that numerous positions in those areas have been awarded since that time to other applicants. On the other hand, defendants assert that there have been no positions available during that period for which Lussier was qualified.

In his complaint in this case, Lussier alleges that various Florida officials discriminated against him on the basis of a handicap, i.e., his hepatitis condition, in violation of § 794 of the federal Rehabilitation Act.[2] Lussier also asserts that those offi-

---

1. Ultimately, Lussier's applications for worker's compensation and disability retirement benefits were denied. Those claims are not involved in this appeal.

2. Section 794 provides in part: "No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from participation in, be denied the benefits of, or be subjected to dis-

cials made no effort reasonably to accommodate his condition by offering to him other suitable employment, also in violation of that Act. In addition, Lussier asserts violations by defendants under 42 U.S.C. § 1983.

Defendants are current and former Florida prison or other officials. Richard Dugger is the current secretary of the Department; Louie L. Wainwright is the former secretary, who held office at the time of Lussier's employment and termination by the Department; G.S. Fortner was Avon's superintendent while Lussier worked there; and Dr. Paul J. Uhrig was the Dental Executive Director of the Department throughout the relevant time period. Gilda H. Lambert was the Secretary of Florida's Department of Administration.[3]

The district court disposed of Lussier's claims in two separate orders. First, on November 18, 1987, that court determined that Lussier had a viable cause of action under § 794 for equitable prospective relief, but struck all claims for retroactive monetary relief. Second, on October 18, 1988, after defendants presented contentions that § 794 did not apply to them because the medical division of the Department had not received any federal funds, the district court granted judgment for defendants on all of Lussier's claims. Thereafter, Lussier moved for reconsideration, arguing for the first time that the Civil Rights Restoration Act of 1987 extended the scope of § 794 to defendants.[4] 102 Stat. 29, P.L. 100–259 (codified with respect to the Rehabilitation Act at 29 U.S.C. § 794(b)). The district court, on March 28, 1989, denied that motion on the grounds that Lussier had not timely raised the contention that the 1988 legislative change should be retroactively applied. Lussier then instituted this appeal from the district court's orders of October 18, 1988 and March 28, 1989.

### I.

The district court concluded that it lacked jurisdiction over Lussier's § 794 claim because the Department's Division of Medicine which employed Lussier was a separate "program or activity" within the Department. Section 794 reaches discrimination against handicapped individuals by "any program or activity receiving federal financial assistance." The district court determined on October 18, 1988 that, because Lussier had presented no evidence that the Division of Medicine, as a discrete entity, received federal funds, the provisions of the Rehabilitation Act did not extend to it. In so doing, the district court concluded that the term "program or activity" in § 794 should be narrowly construed to encompass only those entities within an institution actually receiving federal funds.

That determination fully accords with the holding in *Grove City College v. Bell*, 465 U.S. 555, 570–74, 104 S.Ct. 1211, 1219–22, 79 L.Ed.2d 516 (1984), and the views expressed in *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 635–36, 104 S.Ct. 1248, 1255–56, 79 L.Ed.2d 568 (1984), and *United States v. Alabama*, 828 F.2d 1532, 1548 n. 63 (11th Cir.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988). But the continued vitality of *Grove City* was effectively eliminated by the federal Congress in March, 1988, by the passage of the Civil Rights Restoration Act, a development ignored by both sides in this case until Lussier moved for reconsideration on October 28, 1988, ten days after the district court entered judgment for defendants. Then, on October 28, 1988, Lussier for the first time contended that the Civil Rights Restoration Act of 1987, passed six months earlier in March, 1988, statutorily

crimination under any program receiving Federal financial assistance...."

**3.** The Florida Departments of Correction and Administration, named as defendants in Lussier's original complaint, were dropped from his amended complaint. It would appear that Dugger and Wainwright are named in both their individual and official capacities, Uhrig and Fortner are named in their individual capacities, and Lambert is named in her official capacity. *See* n. 10, *infra*.

**4.** While the Act was enacted into law in March, 1988, the hearings concerning the legislation took place in 1987, and the Act is entitled the "Civil Rights Restoration Act of 1987."

overruled the *Grove City* holding. The district court denied said motion to reconsider on the grounds that Lussier could not raise a new legal argument after final judgment had been rendered against him when that argument had been available to him at the time at which Lussier had earlier responded to defendants' motion for summary judgment. Moreover, the district court stated that, under any circumstances, the Civil Rights Restoration Act of 1987 should not be given retroactive application in this case.

In this appeal, Lussier asserts that the 1988 congressional action applies retroactively and that, even if it does not, the district court erred in concluding that the Medical Division constituted a separate "program" under *Grove City*.

■ The Civil Rights Restoration Act of 1987 became law on March 22, 1988, with the expressed purpose of restoring "the prior consistent and long-standing executive branch interpretation and broad, institution-wide application" of four civil rights statutes, including the Rehabilitation Act. 29 U.S.C. § 794.[5] The preamble to the 1988 legislation states that it was enacted "to restore the broad scope of coverage and to clarify the application of title IX of the Education Amendments of 1972, section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and title VI of the Civil Rights Act of 1964." P.L. 100–259 (1988). The Senate Report accompanying the legislation announced outright that the purpose of the statute was "to overturn the Supreme Court's 1984 decision in *Grove City College v. Bell*...." S.Rep. No. 64, 100th Cong., 2d Sess. 2, *reprinted in* 1988 U.S.Code Cong. & Ad. News 3, 3–4. Lussier notes that this case was pending in the district court when the amendment was passed and contends that the amendment applies in this litigation.

Such retroactive application accords with a long-standing general rule of statutory construction. In *Bradley v. School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1973), the Supreme Court invoked what Justice Blackmun characterized as the traditional "principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016, citing *United States v. Schooner Peggy,* 1 Cranch 103, 2 L.Ed. 49 (1801) (Marshall, C.J.). In *Bradley,* Justice Blackmun also noted that "[t]he Court has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional," *id.* at 720, 94 S.Ct. at 2020, and also that retroactive application may be especially likely to produce manifest injustice "in mere private cases between individuals." *Id.* at 717, 94 S.Ct. at 2019, quoting *United States v. Schooner Peggy,* 1 Cranch at 110, 2 L.Ed. 49. Citing specifically to *Bradley,* Judge Clark of this court has written that "a new statute should apply to cases pending on the date of its enactment unless manifest injustice would result or there is a statutory directive or legislative history to the contrary." *United States v. Kolter,* 849 F.2d 541, 543 (11th Cir.1988). It is also to be noted that "statutory changes that are procedural or remedial in nature apply retroactively." *United States v. Vanella,* 619 F.2d 384, 386 (5th Cir.1980). Herein, the statutory change is remedial in nature.

The district court below observed that, in situations in which retroactive application of a statute would alter the obligations and liability of federal grant recipients, manifest injustice would result. The court re-

---

**5.** The Civil Rights Restoration Act of 1987 amended the Rehabilitation Act to include in the definition of the term "program or activity":

    (1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
    (B) the entity of such State or local government that distributes such assistance and each

such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;

    ....
§ 794(b)(1).

lied upon *Bennett v. New Jersey,* 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), in which the Supreme Court determined that certain substantive provisions of the 1978 amendments to the Elementary and Secondary Education Act should not be applied retroactively to require repayment of funds received in prior years under different statutory standards. In *Bennett,* Justice O'Connor concluded that "absent a clear indication to the contrary in the relevant statutes or legislative history, changes in the substantive standards governing federal grant programs do not alter obligations and liabilities arising under earlier grants." *Id.* at 641, 105 S.Ct. at 1561. That direction of the Supreme Court was applied by this court in *National Wildlife Federation v. Marsh,* 747 F.2d 616, 620 (11th Cir.1984), in which Judge Kravitch held that a federal housing development grant recipient had a vested right in funding under terms of a prior statute—a right which could not be disturbed by retroactive application of the amended statute without causing manifest injustice.

Neither *Bennett* nor *National Wildlife Federation* is dispositive in this appeal. Those cases involved amendments to statutory grant programs which substantively altered eligibility requirements. *Bennett,* 470 U.S. at 637–38, 105 S.Ct. at 1558–59; *National Wildlife Federation,* 747 F.2d at 620. In contrast, the Civil Rights Restoration Act of 1987 is not an amendment to a funding statute and makes no changes with respect to eligibility requirements under a preexisting grant program. Rather, the legislation is purely remedial, enacted to "assist in the struggle to eliminate discrimination from our society by ending federal subsidies of such discrimination." S.Rep. No. 64, P.L. 100–259, *reprinted in* 1988 U.S.Code Cong. & Admin.News 9. Moreover, the Civil Rights Restoration Act of 1987 itself does not change prior legislation, but rather merely corrects judicial interpretations which the Congress believed

"unduly narrowed or cast doubt upon the broad application" of the civil rights laws. P.L. 100–259 § 2.

■ It is of course true that state officials such as defendants herein could not have anticipated the 1988 legislative disavowal of the Supreme Court's decisions. However, defendants cannot legitimately liken the situation of a state governmental agency to that of a grant recipient who possessed a statutory right "which had matured or become unconditional." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020. Further, the rights of private parties, the real concern of the Court when it fashioned the *Bradley* "manifest injustice" exception, are in no way implicated by retroactive application herein of the amendment. Thus, retroactive application of the amendment does not herein work "manifest injustice."

In the absence of "manifest injustice," retroactive application is mandated unless contrary legislative intent is present. *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016. In this instance, the history of the 1988 legislation reveals no hint that Congress intended the amendment to apply prospectively only. Indeed, the language of the amendment, which makes repeated assertions that the statute will "restore" and "clarify" Congress' original intent to apply the antidiscrimination laws broadly, is strongly consistent with retroactive application.[6] Finally, and of the utmost importance, the statute's sponsors explicitly stated in debates that the bill should apply retroactively. For example, Congressman Edwards stated outright on the floor of Congress that "[t]his bill applies to all pending cases." 134 Cong.Rec. H583 (daily ed. Mar. 2, 1988), *cited in Leake v. Long Island Jewish Medical Center,* 695 F.Supp. 1414, 1416 (E.D.N.Y.1988), *aff'd,* 869 F.2d 130 (2d Cir.1989), in which Chief Judge Platt noted that Congressman Edwards was "the floor sponsor of the Restoration Act," *id.,* and retroactively applied the 1988 congressional change. *See also,* to the

---

**6.** The preamble to the Civil Rights Restoration Act characterizes the legislation as "[a]n Act to *restore* the broad scope of coverage and to *clarify* the application of" the four enumerated civil rights statutes. Section 2, "Findings of Con-

gress," states that "legislative action is necessary to *restore* the prior consistent and long-standing executive branch interpretation and broad, institution-wide application of those laws as previously administered." (Emphases added).

same effect, *Bonner v. Arizona Dept. of Corrections,* 714 F.Supp. 420, 422–23 (D.Ariz.1989). In both cases, the district courts, applying *Bradley,* located neither manifest injustice nor contrary legislative intent. Judge Platt in *Leake* explicitly considered whether the *Bennett* exception counseled a finding of manifest injustice against the retroactive application of the Act to federal grant recipients and discussed distinctions between the amendment and the kinds of funding statutes to which the *Bennett* exception attaches. *Leake,* 695 F.Supp. at 1416–17. *Cf. United States v. Louisiana,* 692 F.Supp. 642, 652 (E.D.La. 1988).

Accordingly, we conclude that the Civil Rights Restoration Act of 1987 does apply retroactively in this case.

## II.

Although the Civil Rights Restoration Act became law in March, 1988, Lussier failed to argue that it should be retroactively applied herein in his response to the State's motion for summary judgment filed in August, 1988, and then supplemented by him one month later. Indeed, Lussier did not refer to the 1988 legislation until October 28, 1988 when he filed a motion for reconsideration of the district court's order dated October 18, 1988.

■ Motions for relief from judgment are subject to the trial court's discretion. *See American Home Assurance v. Glenn Estess & Assoc.,* 763 F.2d 1237, 1238–39 (11th Cir.1985). "It is certainly true that it is the policy of the law to favor a hearing of a litigant's claim on the merits. It is also true that this policy must be balanced against the desire to achieve finality in litigation." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2857 at 159.

The district court in this case balanced those interests in favor of finality, reasoning:

> Here, the plaintiff, by failing to raise the amendment to § 794 before the entry of summary judgment, when it could and

should have been raised, cannot now be heard to argue for its application. The policy of finality must be respected, where, as here, plaintiff had every opportunity to present the applicability to the amendment to this case but did not so. Plaintiff had his bite at the apple, he may not have another.[7]

■ Motions, such as motions to amend, should not be used "to raise arguments which could, and should, have been made before the judgment is issued." *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986). After a judgment has been entered, the interest in finality may be deemed "compelling," *Union Planters Nat'l Leasing v. Woods,* 687 F.2d 117, 121 (5th Cir.1982), quoting *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 598 n. 2 (5th Cir.1981). "A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Id.,* quoting *Freeman v. Continental Gin Co.,* 381 F.2d 459, 469 (5th Cir.1967). A district court's denial of reconsideration is especially soundly exercised when the party has failed to articulate any reason for the failure to raise an issue at an earlier stage in the litigation. *Van Ryn v. Korean Air Lines,* 640 F.Supp. 284, 286 (C.D.Ca.1985). A district court's exercise of such discretion is not, however, without limitation. While, as a rule, parties are not entitled to "two bites at the apple", there are occasions in which reconsideration should be entertained. *American Home Assurance,* 763 F.2d at 1239, quoting from *Union Planters, supra* at 121.

■ In this case, the district court's refusal to alter an order, entered ten days before Lussier sought reconsideration with regard to it, occurred six months after the passage of the 1988 legislation, which was an important chapter in the development of American statutory civil rights law. Its enactment was a highly publicized event. In that context, the district court deemed Lussier's failure to discuss the amendment in his response to defendants' June, 1988,

---

7. Memorandum and Order, March 28, 1989    at p. 3.

motion for summary judgment to be inexcusable. That is an understandable position. But it is equally difficult to understand why defendants similarly failed to alert the court to the new law. Accordingly, in our view, the district court's refusal to correct a ten-day-old order, when that order reached a result contrary to the clear intent of Congress, constitutes an abuse of discretion. Therefore, this case must be remanded to the district court with directions to permit Lussier to proceed with his § 794 claim.[8]

### III.

■ Because it determined, for reasons discussed *supra*, that Lussier was not entitled, in any event, to any relief under § 794, the district court did not reach the issue of whether, under that statutory provision, Lussier was "otherwise qualified" to continue working in the Department, and whether defendants had an obligation, under that section of the federal Rehabilitation Act, "reasonably [to] accommodate" plaintiff, as required by the regulations implementing § 794, 45 CFR § 84.12, and the Supreme Court's decision in *School Board of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). However, in the light of the views

expressed by this court, *supra*, that issue must now be considered by this court in the within appeal.

The duty of an employer "reasonably [to] accommodate" a handicapped employee was characterized by Justice Brennan in *Arline* as follows:

> Employers have an affirmative obligation to make a reasonable accommodation for a handicapped employee. Although they are not required to find another job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies.

480 U.S. at 289 n. 19, 107 S.Ct. at 1131 n. 19. Lussier, as the district court found on the record before it, is a handicapped individual. Thus, questions arise as to whether Lussier is otherwise qualified for a position in the Department within the standard enunciated by Justice Brennan, and, if so, whether the Department has accommodated him. That inquiry, in and of itself, requires a remand to the district court for determination of two important factual issues which cannot be decided on the basis of the present record before this court.

---

**8.** Lussier advances the alternative argument that, even if the Civil Rights Restoration Act does not apply retroactively, the district court erred in its factual finding that the medical division was a separate program or activity. That contention is without merit. While the parties agree that the Department, as a whole, received federal funds, the record supports the district court's conclusion, in the context of defendants' summary judgment motion, that the Department's medical division had neither directly received federal funds nor funds from a co-mingled general account within an entity which benefitted from federal grants. Thus, the district court correctly applied *Grove City, Darrone* and *United States v. Alabama.* In that regard, it is to be noted that in making its determination, the district court relied on the affidavit testimony of two state prison officials. That evidence was sufficient under Fed.R.Civ.P. 56(e) which requires that "[s]upporting and opposing affidavits shall be made on personal knowledge...." The district court correctly concluded that the Assistant Secretary for the Office of Management and Budget and the Director of the Division of Accounting and Auditing of the Department of Banking and Finance

had the requisite personal knowledge, as affiants, to fulfill Rule 56(e)'s requirement.

Moreover, Lussier presented no evidence to contradict the testimony of those state officials. In response to defendants' motion for summary judgment, Lussier stated only that the medical division was not a distinct unit, and that he was paid from general department funds. The district court determined that that evidence was inadequate under Rule 56(c), because, as *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1985), teaches, Rule 56(c) "does not allow the plaintiff to simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof of trial, he must come forward with at least some evidence to support each element essential to his case at trial." In that regard, "[m]ere allegations" made by Lussier are insufficient. Memorandum and Order, October 18, 1988 at 5. Finally, the district court concluded that Lussier also lacked the competence and the personal knowledge required by Rule 56 to testify to the Department's financial structure.

To begin with, the parties disagree as to whether Lussier is qualified to work as a Department dentist. Defendants contend that Lussier's chronic hepatitis condition precludes his continued dental practice, and that the Department can deny further employment to him by virtue of its legitimate interest in protecting the health and safety of its prison population. Lussier, however, argues that he recovered from hepatitis in 1985 and that, since then, he has not been a contagious carrier of the disease. In so asserting, Lussier points to a 1985 letter from his physician stating that his medical condition had abated to the point where he could safely resume the practice of dentistry. Any determination of whether Lussier was "otherwise qualified" to resume work with the Department requires amplification and resolution of that factual issue. As the Supreme Court observed in *Arline*, 480 U.S. at 288, 107 S.Ct. at 1131, that type of decision must be based on medical information regarding the nature of Lussier's physical impairment and the risks posed by exposing others to an employee handicapped by the condition.

Similarly, a material factual dispute exists as to whether the Department could have accommodated Lussier after his 1985 recovery from an acute episode of hepatitis. No party disputes that the Department could legitimately refuse to employ Lussier during his protracted periods of contagious illness. However, in the period after 1985, Lussier claims to have repeatedly sought employment for open positions in which he should have been placed, while defendants take the position that the Department had, during that time period, no openings for which Lussier was qualified. In so disagreeing, the parties point to different testimonial and documentary evidence in the record to support their respective contentions. The process of weighing such conflicting evidence properly must take place in the trial court upon remand.

## IV.

The district court concluded that the Eleventh Amendment bars Lussier from obtaining all of the retroactive pay and retroactive benefits under § 794 which Lussier seeks. In *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), the Supreme Court held that "the Rehabilitation Act does not abrogate the Eleventh Amendment bar to suits against the States." *Id.* at 246, 105 S.Ct. at 3149.[9] Indeed, as the district court below observed, such retroactive relief would constitute the payment of money damages from the state treasury in a suit against state officials. *See Edelman v. Jordan*, 415 U.S. 651, 667–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974).

However, as Lussier has pointed out in the within appeal, a 1986 amendment to the 1964 Civil Rights Act, 42 U.S.C. § 2000d, does express the "unequivocal congressional intent to abrogate the States' Eleventh Amendment immunity" required by *Atascadero*, 473 U.S. at 247, 105 S.Ct. at 3150. Section 2000d–7, added to the Civil Rights Act in October, 1986, provides that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 794 of Title 29...." § 2000d–7(a)(1). The statute further states that remedies for Rehabilitation Act violations "are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State." § 2000d–7(a)(2). Finally, Congress expressly provided an effective date for the application of the amendment, stating that § 2000d–7 is to be applied "to violations occurring in whole or in part after October 21, 1986." § 2000d–7(b). Thus, the district court was correct, under *Atascadero*, in denying retroactive relief to Lussier for any violation which may have occurred prior to the amendment's effective date of October 21, 1986. However, Lussier also claims that

**9.** In *Atascadero*, Justice Powell wrote: "The provisions of the Rehabilitation Act fall far short of expressing an unequivocal congressional intent to abrogate the States' Eleventh Amendment im-

munity. Nor has the State of California specifically waived its immunity to suit in federal court." *Id.* at 247, 105 S.Ct. at 3150.

his rights under § 794 have been violated since that date, by virtue of the State's refusal to rehire him, and that, therefore, the district court erred in striking his claims for back pay and benefits from October 21, 1986 to the present.

In this appeal, Lussier contends that, since 1986, he has made repeated, unsuccessful attempts to regain employment with the Department, but that those attempts were unsuccessful despite the fact that numerous dental and other job openings for which he is qualified were available. However, Lussier's complaint to the district court did not contain such allegations. With respect to continued employment after he regained his health in 1985, Lussier's complaint only described reemployment denials by the Department which occurred in that year.

■ Thus, for Lussier to seek relief for violations occurring after October 21, 1986, Lussier will need permission from the district court to supplement this complaint when the case returns to the district court upon remand. Rule 15(d) of the Federal Rules of Civil Procedure states that "transactions or occurrences or events which have happened since the date of the pleading" should be added to the complaint via a motion to supplement the pleading. A supplemental pleading is an appropriate vehicle by which to "set forth new facts in order to update the earlier pleading, or change the amount or nature of the relief requested in the original pleading," 4 C. Wright & A. Miller, 4 *Federal Practice and Procedure* § 1504 at 536–37 (footnotes omitted). The district court certainly did not err in any way in holding in November, 1987, on the state of the record then before it, that Lussier was not entitled to any back pay or other monetary relief sought by Lussier. Nevertheless, as of the date of this opinion, in view of the statutory changes made by the Congress and the need, for reasons stated *supra,* for a remand to be ordered in any event, the district court should afford Lussier an opportunity timely further to amend his complaint with allegations of discrimination occurring after the effective date of § 2000d–7.[10]

## V.

■ The district court held that Lussier could not meritoriously state his claims for relief under 42 U.S.C. § 1983. The court first concluded that handicapped persons are not members of a suspect class for equal protection purposes, and that the State had not infringed upon any fundamental right of Lussier. Accordingly, the district court confined its consideration to the question of whether the actions of defendants had a rational basis,[11] and deter-

**10.** Section 794 suits against individual state and local officials acting in their individual capacities have often been brought and entertained. *See, e.g., School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), *aff'g* 772 F.2d 759 (11th Cir.1985); *Norcross v. Sneed,* 573 F.Supp. 533, 535 (W.D.Ark. 1983), *aff'd,* 755 F.2d 113 (8th Cir.1985); *Jennings v. Alexander,* 518 F.Supp. 877 (M.D.Tenn. 1981). However, upon remand, the district court should afford to those defendants who are named in their individual capacities the opportunity to amend their answers to Lussier's amended complaint to include the affirmative defense of qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and its progeny, since those defendants may be entitled to such immunity for acts taken before March 22, 1988 when Congress enacted the Civil Rights Restoration Act of 1987. Seemingly, until March 22, 1988, those defendants acted in reliance upon the Supreme Court's decision in *Grove City, see* Part I, *supra,* and may, in the light of questions concerning retroactive application of that statute, have so acted thereafter. Further, the qualified immunity defense may be applicable with respect to actions taken by those defendants in their individual capacities before a contagious disease was held to be a handicap covered by § 794. *See Arline v. School Board of Nassau County,* 772 F.2d 759 (11th Cir.1985), *aff'd* in *School Board of Nassau County v. Arline, supra.* As to claims by plaintiff against defendants in their official capacities for monetary compensation, the Eleventh Amendment issues are dealt with in Part IV, *supra,* and, of course, the Eleventh Amendment does not bar Lussier's claims for equitable relief under § 794 against defendants named in this case in their official capacities. *See Cory v. White,* 457 U.S. 85, 89, 102 S.Ct. 2325, 2328, 72 L.Ed.2d 694 (1982); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

**11.** *See* the district court's November 17, 1989 Order at 14.

mined that, in terminating a dentist who was diagnosed with chronic infectious hepatitis, the State had acted pursuant to a legitimate government interest, namely, the protection of the health and safety of the Avon prison population.

As discussed *supra*, Lussier contends that he has submitted valid evidence that he is no longer contagious and, in any event, that there are non-dental jobs in the Department for which even a hepatitis carrier is qualified. In support of that position, Lussier refers to a 1985 letter from his physician stating that Lussier had recovered and could safely return to dental practice. That letter seemingly constitutes competent evidence based on personal knowledge for Rule 56 purposes. As such, it raises a dispute regarding a material fact. If it is taken as true, then a reviewing court may conclude that the record does not support a finding that the State's exclusion of a recovered, non-contagious, former hepatitis patient is "rationally related to a legitimate governmental purpose." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446, 105 S.Ct. 3249, 3258, 87 L.Ed.2d 313 (1985). In that context, further consideration by the district court of Lussier's equal protection claim is required.[12] It is to be noted, however, that in *Cleburne*, Justice White, writing for the majority, rejected the contention that mentally handicapped persons constitute a quasi-suspect class and are entitled to claim protection of "heightened" scrutiny. *Id.* at 445–46, 105 S.Ct. at 3257. *Cleburne* thus clearly indicates that legislation affecting persons suffering from a physical handicap such as hepatitis is to be judged, in the face of an equal protection challenge, in terms of the "rationally related," and not a higher, standard. *Id.*

## VI.

Section 794a(b) of the Rehabilitation Act provides that the court may, as matter of discretion, "allow the *prevailing party,* other than the United States, a reasonable attorney's fee as part of the costs." 29 U.S.C. § 794a(b) (emphasis added). 42 U.S.C. § 1988 sets forth a similar provision in connection with a prevailing party in a section 1983 suit. Upon remand, if Lussier should prevail on all or some of his claims, then the district court should appropriately consider Lussier's application for attorney's fees under one or both of § 794 and § 1983.

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings in accordance with this opinion.

JOHNSON, Circuit Judge, dissenting:

I cannot agree with the majority's conclusion that the Civil Rights Restoration Act applies retroactively to Lussier's claim. Because I feel that the law requires this Court to affirm the district court opinion, I respectfully dissent.

### A. *Retroactivity*

In *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), the Supreme Court held that "absent a clear indication to the contrary in the relevant statutes or legislative history, changes in the substantive standards governing federal grant programs do not alter obligations and liabilities arising under earlier grants." *Bennett*, 470 U.S. at 641, 105 S.Ct. at 1561. The Court based its decision on the fact that enforcement of the requirements of federal grant programs must be evaluated by the law in effect at the time the grants are made. *Id.* at 640, 105 S.Ct. at 1560. Otherwise, the government's right to recover misspent funds would "depend on the

---

**12.** In addition to stating contentions under § 794 and an equal protection claim under § 1983, Lussier alleges a § 1983 violation arising out of defendants' alleged § 794 violation. Because the district court granted summary judgment for defendants regarding the § 794 claims on jurisdictional grounds, it did not consider the § 1983 implications of Lussier's allegations under § 794. If Lussier is entitled to relief under § 794 itself, there seemingly will be no need to consider whether such entitlement would also enable him successfully to claim under § 1983 for a § 794 violation. However, if, for any reason, Lussier may not obtain relief under § 794 for a violation of that statute, then further consideration should be given to his said § 1983 claim for relief.

fortuitous timing of completion of the review process." *Id.* In other words, "statutes affecting substantive rights and liabilities are presumed to have only prospective effect." *Id.* at 639, 105 S.Ct. at 1560. Similarly, this Court has held that "statutory changes that are procedural or remedial in nature apply retroactively," *United States v. Vanella,* 619 F.2d 384, 386 (5th Cir.1980), while "retrospective operation will not be given to a statute which interferes with antecedent rights." *Id.* at 395 (quoting *Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964)).

Section 794a(a)(2) of the Rehabilitation Act states that anyone discriminated against in violation of section 794 shall have available the remedies found in Title VI of the Civil Rights Act of 1964 (42 U.S.C.A. § 2000d *et seq.*). Section 602 of Title VI allows compliance to be effected by termination of or refusal to grant federal assistance. 42 U.S.C.A. § 2000d–1. Thus, like the statute involved in *Bennett,* section 794 gives the federal government a right to rescind assistance if there is no compliance. Under the broad holding in *Bennett,* therefore, a substantive change in section 794 cannot alter any obligations and liabilities arising under the earlier grants.

The majority concludes that *Bennett* and *National Wildlife Federation v. Marsh,* 747 F.2d 616 (11th Cir.1984), are not dispositive because they involve "amendments to statutory grant programs which substantively altered eligibility requirements." I disagree. Before March 1988, agencies and institutions were liable under section 794 only if a specific program or activity received federal assistance. After the amendment's passage, such agencies and institutions became liable if they themselves received any federal funding. It is clear, therefore, that the 1988 amendment alters the substantive obligations and liabilities of agencies and institutions receiving federal funds. The amendment clearly alters eligibility requirements. Under *Bennett,* such changes cannot apply retroactively. The majority also concludes that

retroactive application of the amendment will not work manifest injustice under *Bradley* because the amendment affects the rights of agencies rather than the rights of individuals. I fail to see how this injustice is any more just because it disadvantages a government agency rather than an individual.

The majority finds that the Civil Rights Restoration Act works no substantive change, but is merely remedial in nature, and clarifies what Congress intended all along. I disagree for two reasons. First, while Congress may have intended section 794 to apply to any agency receiving federal funds, the Supreme Court held otherwise in *Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), and agencies justifiably gauged their obligations under that decision. Second, even if the Restoration Act is simply remedial, this Court and the Supreme Court also have held that a statute, even one which is remedial in nature, may not be applied retroactively to affect antecedent rights. *Vanella,* 619 F.2d at 395; *Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964). I cannot reconcile the retroactive application of the Restoration Act with these principles.

Lussier's suit against Wainwright, Uhrig and Fortner is precluded for an additional reason. There is some contention between the parties, raised in the Department's motion to dismiss and addressed by the majority in footnote 10, regarding whether Lussier may sue the individual defendants under section 794. The Department argues that these individuals are shielded from liability by qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Even assuming that individuals may be sued under section 794 —and this Circuit has not so held [1]—it appears that qualified immunity would protect these defendants. They are government officials—directors and officers of the correctional institute—performing the discretionary functions of hiring and firing.

[1] Because section 794 gives a right of action against *programs* or *activities* receiving federal funds, it is difficult to see how one could interpret the statute as providing a right of action against individuals. Individuals are not programs or activities.

*Id.* at 818, 102 S.Ct. at 2738. At the time of Lussier's firing in 1983, they could not have reasonably been expected to know that section 794 applied to Lussier, because this Circuit did not define contagious disease as a handicap until 1985, when it decided *Arline v. School Bd. of Nassau County,* 772 F.2d 759 (11th Cir.1985); that decision was not affirmed by the Supreme Court until 1987. *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). As the majority suggests, therefore, the individual defendants must be allowed to raise the defense of qualified immunity regardless of the outcome of the retroactivity question.

#### B. *Section 1983*

The fact that Lussier has no cause of action under section 794 also should preclude his claim that the defendants violated 42 U.S.C.A. § 1983 by discriminating against him under section 794. I agree with the majority, however, that the summary judgment on the equal protection/rational basis claim must be reversed and that suit must be remanded to the district court for further factual development regarding this claim. The fact that the defendants did not violate section 794 does not foreclose the possibility that they may have had no rational basis for refusing to rehire Lussier after he recovered from the hepatitis.

#### C. *Retroactive Back Pay and Benefits*

My conclusion that the Restoration Act does not apply retroactively leads me to conclude that Lussier has no claim for retroactive back pay and benefits. Even if Lussier did have a section 794 claim, however, I am hard-pressed to see how section 2000d–7 provides him the means to recover back pay and benefits. First, it does not appear from my review of the record that this issue is properly before the Court. It was in the November 18, 1987 grant of summary judgment on Lussier's section 1983 claim against Wainwright that the district court denied Lussier retroactive relief. Lussier did not appeal from that judgment. He appealed from the October 18, 1988 summary judgment on his section 794 claims, which did *not* address the back pay/benefits question, and from the March 28, 1989 denial of his motion to reconsider that summary judgment. Because Lussier did not appeal from the judgment which resolved these issues, it is not proper for this Court to consider them.

Had the question properly been appealed, Lussier has not supplemented his pleadings to set forth "transactions or occurrences or events that have happened since the date of the pleading...." Fed.R.Civ.P. 15(d). It is not the role of this Court to instruct Lussier in the art of proper pleading. Absent such a supplement, Lussier has no claim.

For the above reasons, I conclude that this Court should affirm the district court on all issues except Lussier's equal protection claim. That issue should be remanded for further factual development.