958 F.2d 1044
 22 Fed.R.Serv.3d 1221
 Kevin Daryl O'NEAL, Plaintiff-Counterclaim-Defendant, Appellee,
Liberty Mutual Insurance Company, and Clopay Corporation,
Intervenors-Appellants,
v.
Joe Martin KENNAMER, Defendant-Cross-Claim-Defendant,
W.S. Newell, Inc., Defendant-Cross-Claim Plaintiff-Appellee,
Prince Trucking, a partnership,
Defendant-Counterclaim-Plaintiff-Cross-Claim Defendant,
Associates Insurance Company, Defendant,
v.
LEND LEASE TRUCKS, INC., Counterclaim-Defendant.
 No. 91-7550.
 United States Court of Appeals,
Eleventh Circuit.
 April 20, 1992.
 
 Harold F. Herring, H. Carey Walker, III, Sadler, Sullivan, Herring & Sharp, Huntsville, Ala., for Liberty Mut. Ins. Co., and Clopay Corp.
 R. Ben Hogan, III, Richard D. Stratton, Hogan, Smith, Alspaugh, Samples & Pratt, Birmingham, Ala., for Kevin Daryl O'Neal.
 James E. Davis, Jr., Lanier, Ford, Shaver & Payne, P.C., Huntsville, Ala., for W.S. Newell, Inc.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before KRAVITCH, Circuit Judge, GODBOLD and JOHNSON*, Senior Circuit Judges.
 GODBOLD, Senior Circuit Judge:
 
 
 1
 This appeal concerns a conflict of laws question with respect to subrogation rights of the intervenors, Liberty Mutual and Clopay. It also raises the propriety of the district court's denial of a Rule 59(e) motion to alter or amend the judgment, which motion raised for the first time the contention that state law principles under which the matter was litigated and decided had been preempted by federal law.
 
 
 2
 Kevin O'Neal, a resident of Tennessee who worked for Clopay, a Tennessee employer, was injured in a truck collision in Alabama. He received disability and medical benefits through his employer as required by Tennessee worker compensation laws. O'Neal sued Prince Trucking and W.S. Newell for his injuries in an Alabama federal court with diversity jurisdiction. Clopay and Liberty Mutual, Clopay's workers' compensation program administrator,[1] intervened in this suit.
 
 
 3
 O'Neal settled his suit in April 1991. After settlement the court set about to determine the intervenors' rights to subrogation. Liberty Mutual and Clopay filed a motion setting out the amounts O'Neal had received as compensation and as medical benefits and moved the court to award to them subrogation rights according to provisions of the Tennessee workers' compensation law. Under that law they would be subrogated for both compensation payments and medical benefits. They alleged that O'Neal was a resident of Tennessee, that his place of employment was Tennessee, that his contract of employment was entered into in Tennessee and that the terms of the Tennessee workers' compensation Act were part of his contract, and that the Act covered injuries arising outside of Tennessee as well as those arising within Tennessee. The movants supported their joint motion with affidavits, citations, and a 62 page copy of the entire chapter of the Tennessee Code on workers' compensation.
 
 
 4
 Defendant Newell responded with a motion for partial summary judgment and a supporting brief asserting that under Alabama law the lex loci delicti would control, and, applying Alabama law, Liberty Mutual and Clopay were entitled to recover compensation payments but not medical benefits paid. Prince followed with a similar motion for partial summary judgment, attaching some 41 pages of answers to interrogatories, medical reports, correspondence, and other data.
 
 
 5
 Liberty Mutual and Clopay then filed a motion in opposition to Newell's partial summary judgment motion, supported by a ten page brief contending that Tennessee law covered, not Alabama law. Still later they filed an amendment to this motion, placing before the court a copy of Clopay's Employee Benefit Plan, some 122 pages in length.
 
 
 6
 The district court held that Alabama law was controlling, with the result that Liberty Mutual and Clopay were subrogated to the amount of compensation paid but not to medical benefits. Judgment was entered on May 9.
 
 I. The judgment
 
 7
 A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits. Goodwin v. George Fischer Foundry Systems, Inc., 769 F.2d 708 (11th Cir.1985). The first step in determining whose law is to govern in a conflict situation is the characterization of what kind of case is involved. The law of the forum controls this. Alabama has defined cases like this as tort cases. This is not a suit for workers' compensation. An action against a third-party tortfeasor (or against a co-employee, where not forbidden by the workers' compensation act) is a tort action for damages. Johnson v. Asphalt Hot Mix, 565 So.2d 219 (Ala.1990); Metropolitan Casualty Ins. Co. v. Sloss-Sheffield Steel & Iron Co., 241 Ala. 545, 3 So.2d 306 (1941). The right to which a subrogee is subrogated is "the right of action arising in favor of the injured workmen ... as a proximate consequence of the negligence or wrongful act of [a] third person." Id. 3 So.2d at 308.[2]
 
 
 8
 We turn then to Alabama's conflict of laws rules that govern choice of law in tort cases. The district court held that the substantive rights of an injured party in a tort case are determined according to the law of the state in which the accident occurred. Fitts v. Minnesota Mining & Mfg. Co., 581 So.2d 819, 820 (Ala.1991). If an injured employee recovers damages from a third party, the employer can seek reimbursement for compensation paid to the employee pursuant to workers compensation laws. Ala.Code § 25-5-11(a). In Alabama "compensation" does not include medical benefits. Liberty Mutual Ins. Co. v. Manasco, 271 Ala. 124, 123 So.2d 527, 530 (1960).
 
 
 9
 In Northeast Utilities, Inc. v. Pittman Trucking Co., 595 So.2d 1351 (Ala.1992) the Alabama Supreme Court addressed the issue before us--in a third party action brought in Alabama by a plaintiff who is workers' compensation insured in another state, are the rights to proceeds received by the plaintiff determined by the workers' compensation law of Alabama, the lex loci, of the state whose law the plaintiff invoked to obtain workers' compensation benefits? The court held that Alabama law applied to the rights to the proceeds.
 
 
 10
 Appellants seek to avoid the above analysis at the first step by characterizing the dispute between the intervenors and O'Neal not as a tort case but as a contract case arising from an agreement implied by law between employer and employee. As they spell it out, claims for workmen's compensation are based upon an implied agreement between employee and employer, and that agreement is in the nature of a quid pro quo for which the employee gives up a potentially higher recovery based on tort and receives a high degree of certainty in the receipt of benefits, and the employer gives up tort-based defenses in exchange for benefits that are certain but limited. This, intervenors say, is an implied provision of O'Neal's Tennessee agreement. The difficulty with this is that the decision of what kind of case is involved is governed by Alabama law, and Alabama characterizes this as a tort case, which under Alabama conflicts of laws rules requires application of the lex loci, and, as Northeast Utilities holds, these same principles apply to a determination of the right to proceeds of a third party suit brought in Alabama by the employee. The district court did not err in following Alabama law and denying subrogation to medical benefits and in declining to follow Tennessee law.
 
 
 11
 II. The motion to amend or vacate the judgment
 
 
 12
 Liberty Mutual and Clopay, having litigated and lost on the theory that Tennessee law applied, timely filed a Rule 59(e) motion to alter, amend or vacate the judgment and to award them subrogation to all benefits. They asserted for the first time that neither Tennessee nor Alabama law applied because the employee benefits provided by Clopay to O'Neal constituted an "employee welfare benefit plan" under 29 U.S.C. § 1001, et seq., the Employee Retirement Income Security Act. This Act, they said, supersedes all state laws that relate to an employee welfare benefit plan, including state statutes, regulations, rules and court decisions, and any other state action having the effect of law. Consequently, they contended that the provisions of the Clopay plan itself controlled and that it provided for a right to subrogation for all benefits paid. On June 11, 1991 the court denied the Rule 59(e) motion.
 
 
 13
 The district court did not commit error in denying the Rule 59(e) motion. The decision to alter or amend a judgment is committed to the sound discretion of the district court. This court will not overturn a denial of a Rule 59 motion absent abuse of discretion. American Home Assur. Co. v. Glenn Estess & Associates, Inc., 763 F.2d 1237, 1238-39 (11th Cir.1985). Motions to amend should not be used to raise arguments which could, and should, have been made before the judgment was issued. Lussier v. Dugger, 904 F.2d 661, 667 (11th Cir.1990). Denial of a motion to amend is "especially soundly exercised when the party has failed to articulate any reason for the failure to raise the issue at an earlier stage in the litigation." Id.
 
 
 14
 We have described above the efforts made by intervenors to establish their right to recoup medical benefits they had paid by asserting the primacy of the Tennessee law to the exclusion of Alabama law. Nowhere, until after judgment, did intervenors even whisper that ERISA might govern this case. For several reasons the district court did not abuse its discretion in denying intervenors' effort to obtain a second bite at the apple. The intervenors did not then, and do not now, explain why they failed to raise before judgment the preemption argument they now assert.[3] Nor do they explain why the district court's denial of their motion was an abuse of discretion.
 
 
 15
 Moreover, there are many bridges to be crossed, factual and legal, before a determination can be reached of whether federal law does or does not preempt. No answer is at hand from intervenors' motion (which did not seek a new trial, although it did seek a hearing on the issue of ERISA preemption). There is a factual dispute whether the benefits paid to O'Neal were paid "by virtue of the employee benefit plan" or pursuant to a separate insurance contract with Liberty Mutual maintained solely to comply with Tennessee workers' compensation law. See n. 1 supra. Resolution of this question would require examination of the employee benefit plan handbook and the insurance contract between Liberty Mutual and Clopay. Another issue necessary to determine would be whether state law (Alabama and Tennessee) relating to workers compensation "regulates the business of insurance," which would cause that law to be exempt from preemption under 29 U.S.C. § 1144(b)(2)(A). Answering this inquiry would require examination of factual inquiries set out in Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 743, 105 S.Ct. 2380, 2391, 85 L.Ed.2d 728 (1985),[4] as well as determination of whether the stop-loss/catastrophic coverage provision of the plan caused Clopay to be self-insured, since § 1144(b)(2)(B) prevents application of laws on subrogation to self-funded insurance plans even though such laws govern insurance. FMC Corp. v. Holliday, --- U.S. ----, ----, 111 S.Ct. 403, 112 L.Ed.2d 356, 366 (1990); see also, n. 1, supra.
 
 
 16
 Additionally, it is not clear that if intervenors surmounted the above barriers they then would be entitled to subrogation of medical benefits. Their contention is that the provisions of the plan itself give them that entitlement. The subrogation provision of the plan provides:
 
 
 17
 The plan shall be subrogated to all claims, demands, actions and rights of your recovery against a third party or parties and such third party or parties' insurers to the extent of any and all payments made hereunder by the plan in all jurisdictions where subrogation is lawfully permitted.
 
 
 18
 Intervenors construe this to mean that there is subrogation for all benefits paid even in a jurisdiction (such as Alabama) whose subrogation law permits only recovery of less than all. But a court may well construe the language to mean that payments may be recovered to only the extent recovery is lawfully permitted by the subrogation laws of the state, i.e., in this case Alabama. This is the exact result the district court reached in this case though for different reasons.
 
 
 19
 The district court did not abuse its discretion.
 
 
 20
 The motion to supplement the record is DENIED. The judgment is AFFIRMED. The order denying intervenors' Rule 59(e) motion is AFFIRMED.
 
 JOHNSON, Senior Circuit Judge, dissenting:
 
 21
 This case presents two issues for decision: the sweep of ERISA preemption and the application of Alabama conflicts of law rules. I dissent from the majority's decision not to address the ERISA preemption issue on the merits; the case should be remanded to the district court so that this issue may be properly resolved.
 
 
 22
 The majority concludes that this Court should not address on the merits the issue of ERISA preemption because the appellants failed to raise the issue prior to the entry of final judgment by the district court.[1] The general rule in this Circuit is that a Rule 59(e) motion is not a proper means of raising a new legal argument that could (and should) have been raised prior to the entry of final judgment. American Home Assurance Co. v. Glenn Estess & Associates, Inc., 763 F.2d 1237, 1238-39 (11th Cir.1985). However, like most general rules, this rule is subject to exceptions.
 
 
 23
 This Court will hold a district court's refusal to entertain a new argument raised for the first time in a Rule 59(e) motion as an abuse of discretion where such a refusal impedes important federal law policies. See Lussier v. Dugger, 904 F.2d 661, 667-68 (11th Cir.1990). This exception to the general rule against considering new arguments raised through Rule 59(e) motions is applicable to the case at bar.
 
 
 24
 The appellants' Rule 59(e) motion raises the congressionally-established policy in favor of a uniform federal regulatory scheme for certain employee benefit plans, known commonly as ERISA, and specifically, the discrete issue of preemption of state laws under ERISA. 29 U.S.C.A. § 1144(a) (1985). In ERISA Congress stated, in no uncertain terms, that "the provisions of this subchapter and subchapter III of the chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C.A. § 1144(a) (1985). In my opinion, this language constitutes a clear and express congressional command dictating that state law be preempted in order to protect a legitimate federal interest.[2] Id. See U.S. Const. Art. VI, cl. 2. Because a district court is not free to apply preempted state law in direct contravention of a such a command, the majority should have addressed the issue of ERISA preemption on the merits.
 
 
 25
 Indeed, in somewhat similar circumstances, where a district court entered a judgment inconsistent with federal law, this Court took up the federal law issue sua sponte. See Sherman v. Burke Contracting Inc., 891 F.2d 1527, 1535 (11th Cir.) ("When a trial court has granted a party relief under a statute that provides the party no relief, we must set the court's judgment aside as plain error."), cert. denied, --- U.S. ----, 111 S.Ct. 353, 112 L.Ed.2d 317 (1990). In the more specific context of Rule 59(e) motions, this Court has not hesitated to hold that a lower court has abused its discretion where such a holding was necessary in order to vindicate an important federal policy. Lussier, 904 F.2d at 667-68 (holding district court abused its discretion by failing to consider arguments raising six-month old changes to Title VII that the moving party could have raised prior to judgment). Because the appellants' ERISA preemption argument raises an important issue of public policy,[3] this Court should consider the preemption question on the merits.[4] See id.; McKissick v. United States, 379 F.2d 754, 759-60 (5th Cir.1967). See also Hormel v. Helvering, 312 U.S. 552, 556-60, 61 S.Ct. 719, 721-23, 85 L.Ed. 1037 (1941).
 
 
 26
 Turning to the merits of the ERISA preemption claim, the appellants' argument that Alabama law is preempted by operation of section 1144(a) seems to be without merit. To be sure, ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C.A. § 1144(a) (1985) (emphasis added). However, the application of state law to an employee benefit plan cannot be inconsistent with section 1144(a) if the plan at issue is entirely exempted from the application of ERISA by operation of section 1003(b).
 
 
 27
 Section 1003(b) provides: "The provisions of this subchapter shall not apply to any employee benefit plan if ... such plan is maintained solely for the purpose of complying with the applicable workmen's compensation laws or unemployment compensation laws or disability insurance laws. 29 U.S.C.A. § 1003(b)(3) (1985). Clopay argues that its "employee benefits plan" contains many benefits, including workmen's compensation benefits. O'Neal responds that Clopay's workmen's compensation plan is separately administered from the rest of the Clopay employee benefit program, that it is underwritten by a company different from the other employee benefits programs, and that it is not even mentioned in Clopay's literature describing its employee benefits.
 
 
 28
 Neither the Supreme Court nor this Circuit has directly addressed the issue of when a workmen's compensation plan provided along with other employee benefits is exempt from regulation under ERISA by operation of section 1003(b)(3). The Supreme Court has only noted that the test for the applicability of section 1003(b) "is not one of the employer's motive, but whether the plan, as an administrative unit, provides only those benefits required by state law." Shaw v. Delta Airlines, 463 U.S. 85, 107, 103 S.Ct. 2890, 2905, 77 L.Ed.2d 490 (1983). This language suggests that a proper application of section 1003(b)(3) requires courts to focus on particular administrative units within an employee benefits program rather than the program as a whole.
 
 
 29
 This tentative conclusion is strengthened by reference to cases from outside this Circuit that have considered the issue. In cases presenting similar facts, most courts have rejected appellants' argument regarding the application of section 1003(b)(3). See Fears v. Luedke, 739 F.Supp. 327, 328 (E.D.Tex.1990); Gibbs v. Service Lloyds Ins. Co., 711 F.Supp. 874, 876-79 (E.D.Tex.1989); Foust v. City Ins. Co., 704 F.Supp. 752, 754 (W.D.Tex.1989). The approach taken in Gibbs is particularly persuasive.
 
 
 30
 The Gibbs court examined Shaw and concluded that, if a workmen's compensation plan is a separate administrative unit, then an employer's provision of separately administered plans providing other benefits does not automatically bring the regulation of the workmen's compensation plan within ERISA's regulatory scope. Gibbs, 711 F.Supp. at 878-79. When an employer provides benefits other than workmen's compensation to its employees, Gibbs sets forth a three-part test for determining whether the workmen's compensation plan constitutes a "separate administrative unit" and is therefore exempt from ERISA's coverage. Under the Gibbs test:
 
 
 31
 [A plan falls outside of ERISA if] (1) the workman's compensation insurance is provided through an insurance policy issued by one insurance carrier and all other types of insurance are provided through a separate policy, or policies, issued by another insurance carrier or carriers; (2) the workmen's compensation insurance carrier exercises the sole authority to manage the premium income and funds relating to the workmen's compensation insurance program and to review and approve or deny claims made pursuant to the workmen's compensation insurance policy; and (3) the employer acts as a mere conduit for the transmittal of premiums, forms, and other information between the employees and the separate insurance carriers. Id. at 879.
 
 
 32
 The test suggested in Gibbs is both sensible and consistent with Shaw, and therefore I would adopt it as the law of this Circuit.
 
 
 33
 Applying Shaw and Gibbs to the instant case, the Court must first determine whether the Clopay workmen's compensation plan exists solely to comply with state law.[5] See 29 U.S.C.A. § 1003(b)(3) (1985). Clopay and Liberty Mutual do not claim that the workmen's compensation plan at issue provides more than is required by Tennessee law.[6] Next, the Court must determine whether Clopay offers its employees other benefits in addition to workmen's compensation. See Gibbs, 711 F.Supp. at 878-79. If Clopay does not, the Court's inquiry is at an end, because section 1003(b)(3) exempts from ERISA regulation workmen's compensation plans that do nothing more than is required by state law. 29 U.S.C.A. § 1003(b)(3) (1985). On the other hand, if the Clopay-Liberty Mutual workmen's compensation plan is co-administered with another employee benefit plan, then it is subject to ERISA. See id., Shaw, 463 U.S. at 106-07, 103 S.Ct. at 2904-05; Gibbs, 711 F.Supp. at 879. Workmen's compensation is not the only employee benefit that Clopay provides its employees. Consequently, the section 1003(b)(3) analysis must proceed to the application of the three-factor Gibbs test, which examines whether a particular workmen's compensation plan is co-administered with another plan, to determine whether section 1003(b)(3) exempts the workmen's compensation benefit component of Clopay's employee benefits program from regulation under ERISA. Gibbs, 711 F.Supp. at 879. See Shaw, 463 U.S. at 107-08, 103 S.Ct. at 2905-06.
 
 
 34
 On the facts before the Court, one of the three Gibbs criteria is clearly met: the plan is administratively separate.[7] That leaves for resolution the two other prongs of the test, to wit, whether Liberty Mutual has the discretion to administer the plan, collect and rebate premiums, and carry out the daily tasks that arise under the plan, and whether Clopay acts as little more than a conduit for Liberty Mutual. Gibbs, 711 F.Supp. at 879.
 
 
 35
 Given the factual allegations contained in the parties' appellate briefs, it seems highly probable that the ultimate conclusion in this case should be that the workmen's compensation plan at issue is not governed by ERISA. However, this Court "cannot presume a fact that is not in the record." Meadows v. Cagle's, Inc., 954 F.2d 686, 693 (11th Cir.1992). In this case, the contract between Clopay and Liberty Life regarding the workmen's compensation plan is not in the record. In addition, there is no clear evidence in the record regarding the day-to-day operation of the plan. Under these circumstances, the proper resolution of this issue requires a remand to the lower court.
 
 
 36
 In light of the necessity of a remand, I find it unnecessary to address the merits of the conflicts of law arguments presented by the appellants.[8]
 
 
 
 *
 See 11th Cir.R. 34-2(b)
 
 
 [1]
 The relationship between Clopay and Liberty Mutual is disputed. O'Neal asserts that Liberty Mutual insures Clopay's workers' compensation program; Clopay contends that it is self-insured and Liberty Mutual only administers its program. For the purposes of this opinion we need not resolve this dispute
 
 
 [2]
 A federal district court in Georgia, applying Georgia law, reasoned that the subrogation issue sounded in tort because subrogation involved "stepping into the shoes" of the plaintiff. If those shoes were standing in a tort case, the rights of the subrogee should be determined according to tort law. Swain v. D & R Transport Co., 735 F.Supp. 425 (M.D.Ga.1990)
 
 
 [3]
 The scramble engaged in by intervenors to present a new theory post-judgment did not end with the district court's denial of their Rule 59(e) motion. Almost four months after the denial they filed a motion to supplement the record on appeal by including in the record a memorandum of law that the district court had refused to consider because it was untimely filed. The district court denied the motion to supplement, noting that "because of its grossly untimely filing the Court declined to consider it."
 The intervenors then moved this court to permit the record on appeal to be supplemented with the untimely memorandum. That motion was carried with the case, and it is denied.
 
 
 [4]
 (1) Whether the practice has the effect of transferring or spreading policyholders' risks; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance company. Metropolitan Life 471 U.S. at 743, 105 S.Ct. at 2391
 
 
 [1]
 The lower court summarily refused to consider the ERISA preemption argument after the appellants presented it to the court through a timely filed Rule 59(e) motion to amend the court's final judgment. The district court overruled the motion on its face without any explanation
 
 
 [2]
 ERISA may not, in fact, preempt the state laws at issue in this case; indeed, ERISA probably does not govern the workmen's compensation plan at issue. See infra at 1050-1051. See also 29 U.S.C.A. § 1003(b)(3) (1985). However, the fact that ERISA preemption may not actually apply is irrelevant to the Court's consideration in the first instance of whether the lower court's refusal to consider the preemption issue in the context of a timely filed Rule 59(e) motion constituted an abuse of discretion. Simply put, the Court is not at liberty to peek at the merits when deciding whether or not a lower court erred in refusing to consider a potentially dispositive issue that implicates important federal law policies
 
 
 [3]
 Namely, ERISA preemption of state regulation of certain employee benefit plans
 
 
 [4]
 I am by no means unconcerned about the appellants' failure to raise this issue prior to the entry of final judgment. It cannot be gainsaid that the appellants failed to raise this issue at the proper time, and apparently without any good reason. However, the timeliness of appellants' argument is beside the point. The question for the Court is whether express federal preemption was an issue that a lower court could ignore when it was timely raised in a Rule 59(e) motion. The Court's duty when analyzing the question of whether to take up the ERISA preemption argument is not to weigh the merits of the Rule 59(e) movants' procedural disposition, but rather to consider the importance of the public policy issue presented and the correctness of the district court's action in light of the relevant public policies. See McKissick, 379 F.2d at 758-59
 
 
 [5]
 Appellants argue that Gibbs is inapplicable to the plan at issue because, strictly speaking, Clopay did not purchase workmen's compensation insurance from Liberty Mutual. See Gibbs, 711 F.Supp. at 879 (exemption from ERISA regulation created by section 1003(b)(3) applies when an employer "through [the] purchase of insurance" secured workmen's compensation coverage). This argument is utterly without merit. Whether the plan at issue is largely self-funded or constitutes an "insurance policy" is irrelevant to the determination of the application of section 1003(b)(3). By its own terms, section 1003(b)(3) applies to "any employee benefit plan." 29 U.S.C.A. § 1003(b)(3) (1985) (emphasis added). This necessarily includes plans created under retrospectively rated insurance contracts with stop-loss provisions, the kind of plan at issue in this case. The Gibbs court erred to the extent that it suggested otherwise. See Gibbs, 711 F.Supp. at 879
 
 
 [6]
 Indeed, in their reply brief, the appellants tacitly concede that the workmen's compensation plan was specifically tailored to comply with Tennessee law. Moreover, the affidavits of both Clopay and Liberty Mutual employees contained in the record also support this conclusion
 
 
 [7]
 The record contains a copy of the Clopay Employee Benefits Plan handbook. The handbook makes no mention of workmen's compensation, and the section styled "General Plan Information" indicates that the other employee benefit programs are administered by companies other than Liberty Mutual
 
 
 [8]
 Although it seems unlikely that ERISA regulates the plan at issue, see supra, because the facts necessary to support this conclusion are not in the record, any opinion as to the merits of the conflicts issue would be merely advisory. See United States v. Fruehauf, 365 U.S. 146, 157, 81 S.Ct. 547, 553, 5 L.Ed.2d 476 (1961); Muskrat v. United States, 219 U.S. 346, 362, 31 S.Ct. 250, 256, 55 L.Ed. 246 (1911)