**Omer D. GIBBS**

v.

**SERVICE LLOYDS INSURANCE COMPANY.**

**Civ. A. No. S–89–14–CA.**

United States District Court,
E.D. Texas,
Sherman Division.

May 5, 1989.

Frank Lyle, Hickey & Wood, Denton, Tex., for plaintiff.

E. Thomas Bishop, Strasburger & Price, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

PAUL N. BROWN, District Judge.

The plaintiff Omer D. Gibbs ("Gibbs") commenced this action against defendant Service Lloyds Insurance Company ("Service Lloyds") in the District Court of Denton County, Texas. Service Lloyds issued a policy of worker's compensation insurance to Gibbs' employer Dave Krause Pontiac–Toyota, Inc. ("Krause"). In his state court petition, Gibbs alleged that Service Lloyds had breached its common law duty of "good faith and fair dealing" by mishandling his workmen's compensation claim.[1] Service Lloyds removed the case from the state court on the grounds that Gibbs' cause of action was preempted by ERISA, 29 U.S.C. § 1001, et seq. *See Metropolitan Life Insurance Company v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

Pending before the Court is a motion to remand filed by Gibbs, in which he argues that the workmen's compensation insurance plan provided by his employer is exempt from ERISA under 29 U.S.C. § 1003(b)(3). This section provides in part that "the provisions of this subchapter shall not apply to any employee benefit if— ... such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws ..." The issue before the Court is whether the workmen's compensation insurance plan provided by Krause through Service Lloyds was "separately administered" solely to comply with Texas workmen's compensation laws. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85,

---

1. The duty of workmen's compensation insurance carriers to deal fairly and in good faith with claimants was announced by the Texas Supreme Court in *Aranda v. Insurance Company of North America,* 748 S.W.2d 210 (Tex.1988).

107–108, 103 S.Ct. 2890, 2905, 77 L.Ed.2d 490 (1983).

*Facts*

Krause purchased two insurance policies in order to provide his employees with a range of insurance benefits. One policy, issued by Service Lloyds, provided workmen's compensation insurance and insurance that protected Krause from punitive damage claims under common or statutory law.[2] Krause purchased a second insurance policy from Businessmen's Assurance Company of America ("BMA"). The BMA policy provided a wide range of health insurance benefits, but specifically excluded any provision for workmen's compensation insurance. All of Krause's employees were covered by the Service Lloyds workmen's compensation policy on the day they began work. On the other hand, the BMA policy covered only full-time employees who had completed a minimum length of service requirement of 90 days. Krause paid the insurance companies directly for most of the insurance benefits. Certain benefits under the BMA policy were not automatically provided, but could be elected by the employee. In such cases, Krause would simply deduct the extra premiums for that coverage from the employee's pay and forward it to BMA. Krause also provided the employees with information and forms concerning the two insurance policies. Each of the two insurance carriers separately reviewed and approved or denied any claims submitted. Krause had no authority concerning the claims review process.

*Scope of Section 1003(b)(3)*

The United States Supreme Court in *Shaw* held that the § 1003(b)(3) exemption only applied to "separately administered" plans provided "solely to comply" with applicable state law. *Shaw*, 463 U.S. at 108, 103 S.Ct. at 2905. Yet, the Court failed to provide any functional definition of either of these phrases. The only other discussion of the issue is found in the Second Circuit case that preceded *Shaw, Delta Air Lines, Inc. v. Kramarsky*, 650 F.2d 1287 (2nd Cir.1981).

The analogous issue presented in *Delta Air Lines* was whether a plan that provided disability insurance benefits, another category exempt under § 1003(b)(3), was exempt from ERISA. The Court of Appeals observed that a disability insurance program would be exempt under ERISA if the program "constitutes a separate unit concerned predominately with disability benefits and organized so that it is substantially independent of other benefits programs." *Delta Air Lines*, 650 F.2d at 1307. The Court reasoned that under such circumstances a disability benefits program would constitute a separate "plan" that would be exempt under § 1003(b)(3). *Id.* The purpose of requiring such "separateness" is to avoid subjecting a single benefit plan to inconsistent state and federal regulations. To prevent such disharmony, § 1003(b)(3) applies only to plans as a whole, and not to portions of plans. *Shaw*, 463 U.S. at 107, 103 S.Ct. at 2905. If the type of plans identified in § 1003(b)(3) are both "separately administered" and provided "solely to comply" with the applicable state law, then state regulation of those plans may proceed without interfering with the provisions of and the policies behind ERISA.

*Separate Administration of the Service Lloyds and BMA Plans*

■ The first question presented is whether Krause's workmen's compensation insurance program is a "separately administered" plan. Service Lloyds argues that the workmen's compensation program is not a separately administered plan because it is part of an overall plan that includes the BMA multi-benefit insurance package; Krause provided one overall employee benefit plan and administered that plan as a

---

**2.** An employee covered by workmen's compensation insurance waives his right of action at common law or under any statute to recover damages for injuries sustained in the course and scope of his employment. Tex.Rev.Civ.Stat. Art. 8306 § 3a (Vernon 1988). Texas law exempts from this exclusivity provision actions to recover punitive damages from the employer as a result of the death of the employee due to the gross negligence of the employer. Art. 8306 § 5.

single unit. In support of their contention, Service Lloyds submitted the affidavit of Mr. Krause himself, in which he proclaims that "this package of employee benefits is not maintained by Krause Pontiac solely for the purpose of complying with Texas worker's compensation law." This statement proves nothing, however, for the employer's motives in setting up the plan are irrelevant. The critical analysis focuses upon the administrative structure of the benefit plan provided. *Shaw*, 463 U.S. at 107, 103 S.Ct. at 2905; *Delta Air Lines*, 650 F.2d at 1307.

In an effort to support their contention that the workmen's compensation and BMA multi-benefit insurance programs constituted a single plan, Service Lloyds maintains that Krause is both the plan "sponsor" and "administrator" under 29 U.S.C. § 1002(16). Yet this assertion simply begs the question because the statutory terms would have no application to the workmen's compensation plan if that plan is exempt from ERISA. The defendant's argument simply ignores the critical issue —the structure of Krause's insurance benefit program.

The structure of Krause's program is this. Krause purchased two different insurance policies, providing two distinct types of insurance, from two different insurance carriers. From Service Lloyds he purchased only a workmen's compensation insurance policy; from BMA, he purchased a more comprehensive multi-benefit insurance policy. Krause paid for most of the insurance coverage under both policies and deducted premiums to pay for other coverage elected by his employees. Krause also provided information and forms to employees concerning claims and benefits. Only in the most limited sense did Krause act as an "administrator" of both the Service Lloyds and BMA insurance programs. The authority to review and approve or deny claims rested with each insurance carrier. Service Lloyds and BMA each exercised such authority independently of the other. Each carrier separately received premium income from their respective policies, and they each managed their own insurance funds relating to the different types of insurance they provided. Service Lloyds and BMA provided insurance benefits to two distinct, albeit overlapping, groups. The Service Lloyds policy covered all employees from the very first day on the job. The BMA policy only covered full-time workers who had met a minimum length of service requirement. A review of the administrative structure of the workmen's compensation and multi-benefit insurance programs compels the conclusion that the programs were separately administered by their respective insurance carriers.

Service Lloyds argues that the fact that BMA and Service Lloyds provide different types of insurance and that each separately administers the claims under their separate policies is irrelevant "to whether the Krause Pontiac plan meets the ERISA definition of an employee benefit plan." To the contrary, the existence of separate policies of insurance provided by separate insurance carriers, each of whom separately exercises the final authority and control over the collection and management of premium income and disbursement of funds to pay claims are *precisely* the structural considerations that define a "separately administered plan". That the employees and the two insurance carriers rely on a single entity, Krause, as a conduit for information does not mean that Krause is the administrator of a single overall benefit plan. The reason is simple. The insurance carriers, and not Krause, are subject to the potentially conflicting demands of state and federal regulation. It is Service Lloyds, and not Krause, that is subject to a comprehensive statutory and administrative scheme governing workmen's compensation insurance in the state of Texas. Krause does not administer the workmen's compensation insurance program. Those duties are reserved to Service Lloyds pursuant to the terms of the worker's compensation insurance policy and the Texas workmen's compensation laws. Krause's workmen's compensation insurance program provided by Service Lloyds is a "separately administered" benefit plan.

*"Solely" to Comply With Applicable Law*

The final question this Court must answer is whether the workmen's compensa-

tion plan was provided "solely to comply" with the applicable workmen's compensation laws. Service Lloyds argues that it was not provided "solely to comply" with applicable law because the plan was part of an overall benefit plan that included the BMA multi-benefits package. The Court has already dispensed with this argument, having found that the two policies provided by Service Lloyds and BMA constituted two separately administered plans. Service Lloyds also argues that the workmen's compensation plan was not provided solely to comply with state law because Krause is not required to obtain workmen's compensation insurance under Texas law and because the policy provides one type of insurance that is not workmen's compensation insurance. It thus appears that Service Lloyds interprets § 1003(b)(3) to require that a plan be maintained solely for the purpose of complying with applicable state law *where the maintenance of such plans is mandated by those state laws.* Such an interpretation is a thinly disguised effort at statutory reconstruction.

In Texas, participation in the workmen's compensation scheme is not mandatory, but participation, once chosen, is defined and regulated by a comprehensive regulatory and statutory scheme. In order for an employer to enjoy the benefits and protections of limited liability that workmen's compensation insurance provides, his workmen's compensation plan must comply with applicable law. *See Foust v. City Insurance Co.,* 704 F.Supp. 752, 753–54 (W.D. Tex.1989). Neither employers nor their insurance carriers are free to set up new and innovative insurance plans that do not comply with the statutory scheme and call them workmen's compensation insurance plans.

The plain language of § 1003(b)(3) and the policy behind the exemption do not support Service Lloyds position. If a workmen's compensation insurance plan is structured and administered in such a manner that it poses no potential for interference with federal regulation of an ERISA plan, then it does not matter whether the workmen's compensation plan was mandated or merely permitted by applicable state law. Congress could have chosen to add Service Lloyds' restrictive proviso to § 1003(b)(3), but Congress chose otherwise. Furthermore, the policy behind § 1003(b)(3) is to preserve areas of state regulation where they pose no conflict with the federal regulation of ERISA plans. Service Lloyds' proffered interpretation of § 1003(b)(3) is simply irrelevant to this policy.

Service Lloyds' argument that the plan was not provided solely to comply with state law because it provides a type of insurance that is not workmen's compensation insurance likewise misses the point. An employer is not required to purchase insurance to protect himself against an award of punitive damages arising from a suit by the survivors of an employee who was killed because of the employer's gross negligence. Such a suit for punitive damages is not provided by the Texas workmen's compensation laws, but rather it survives the exclusivity provisions of the workmen's compensation laws through a statutory exemption. Art. 8306 § 5. Although this type of insurance is not mandated by state law, its presence as part of a workmen's compensation insurance plan does not interfere with any federal interest in regulating ERISA plans. An employer may purchase such insurance as part of his workmen's compensation policy and doing so does not take his workmen's compensation plan out of the § 1003(b)(3) exemption. The Court finds, therefore, that Krause's workmen's compensation plan was provided solely to comply with applicable state law.

*Summary*

Employers are free to provide a range of benefits to their employees under ERISA, and workmen's compensation insurance might be one of many benefits provided under an ERISA plan. If, as in this case, the insurance benefits include a separately administered plan of workmen's compensation insurance provided solely to comply with applicable state law, then the workmen's compensation plan is not subject to ERISA. The requirements that such a plan be both "separately administered" and

provided "solely to comply" with applicable law are necessary to ensure that a single benefit plan will not be subject to inconsistent state and federal regulations. *Shaw*, 463 U.S. at 107–108; 103 S.Ct. at 2905.

■ The variety of ways that employers and insurance carriers can structure and administer employee insurance benefit programs renders it difficult to set forth a functional set of criteria that will determine, in all cases, whether a particular workmen's compensation plan was "separately administered" and provided "solely to comply" with applicable state law. Nevertheless, this Court finds that these requirements are met when an employer provides a range of employment insurance benefits, including workmen's compensation insurance, through the purchase of insurance and (1) the workmen's compensation insurance is provided through an insurance policy issued by one insurance carrier and all other types of insurance are provided through a separate policy, or policies, issued by another insurance carrier or other carriers; (2) the workmen's compensation insurance carrier exercises the sole authority to manage the premium income and funds relating to the workmen's compensation insurance program and to review and approve or deny claims made pursuant to the workmen's compensation insurance policy; and (3) the employer acts as a mere conduit for the transmittal of premiums, forms, and other information between the employees and the separate insurance carriers. If these criteria are met, as they are in this case, then such a workmen's compensation insurance plan is exempt from ERISA under § 1003(b)(3).

Having determined that Krause's workmen's compensation insurance plan is exempt from ERISA under 29 U.S.C. § 1003(b)(3), the Court finds that Gibbs' cause of action against Service Lloyds is not preempted by federal law. Accordingly, removal of this case pursuant to *Metropolitan Life Insurance Co. v. Taylor* was improper. Therefore, it is

ORDERED that the plaintiff's motion to remand this case is GRANTED, and this case is REMANDED to the District Court of Denton County, Texas.