Thurman WALKER and his Wife,
Barbara Walker, Plaintiffs,

v.

HEALTH BENEFIT MANAGEMENT
COST CONTAINMENT, INC. and Ser-
vice Lloyds Insurance Company, Defen-
dants.

Civ. A. No. 4:94–CV–144–Y.

United States District Court,
N.D. Texas,
Fort Worth Division.

Aug. 22, 1994.

**1164**

John Henry Fostell, Decatur, Kennedy Gill Kraatz, Fort Worth, for plaintiffs.

Robbie Luann Malone, Dallas, Ronald Habitzreiter, Austin, Darryl Jan Silvera, E. Thomas Bishop, Dallas, for defendants.

*ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING DEFENDANT'S MOTION TO STAY*

MEANS, District Judge.

Pending before this Court are a Motion to Remand filed on March 25, 1994 by Thurman Walker and Barbara Walker ("Plaintiffs"), and a Motion to Stay filed on March 4, 1994 by Service Lloyds Insurance Company, ("Service Lloyds"). After carefully considering both motions, the evidence presented therewith and the responses thereto, this Court has determined that Plaintiffs' motion to remand should be and is hereby GRANTED. Because remand divests this Court of jurisdiction over this cause, Service Lloyds' motion to stay should be and is hereby DENIED.

■ This cause was initiated in the 271st Judicial District Court in Wise County, Texas. Plaintiffs allege that plaintiff Thurman Walker was injured within the scope of his employment with James Burke Construction Company on or about August 8, 1992, and has been receiving workers' compensation indemnity benefits from Service Lloyds, Burke Construction's workers' compensation insurance carrier. Plaintiffs allege that Service Lloyds has denied "needed medical services" requested by Mr. Walker's treating physicians. Plaintiffs allege that defendant Health Benefit Management Cost Containment, Inc. ("HBM") determined that treatment proposed by Mr. Walker's treating physicians was not medically necessary, thus leading to a denial of benefits to Plaintiffs. Against both Service Lloyds and HBM, Plaintiffs assert causes of action arising under the Texas Insurance Code and claim Defendants breached the common-law duty of good faith and fair dealing on the part of an insurer.[1] Service Lloyds, with the consent of HBM, removed the cause to this Court, claiming federal question jurisdiction exists.

Service Lloyds argues that the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. §§ 1001–1461 ("ERISA"), preempts state bad-faith claims brought against workers' compensation carriers. Because the parties in this cause are not diverse, federal question jurisdiction pursuant to 28 U.S.C. § 1331 is the only grounds for jurisdiction in this Court. Unless a federal question exists, this cause must be remanded.

■ Where removal is based on federal question jurisdiction, the general rule is that the plaintiff's underlying allegations (if not the complaint) must invoke the jurisdiction of the federal courts for the cause to be properly removed. *See* 14A Charles A. Wright et al., *Federal Practice and Procedure* § 3734 (1985). However, ERISA's preemptive scope has been defined so broadly as to allow removal even where the plaintiff purports to

---

1. This "bad faith claim" is based on a hybrid tort which may be asserted by an insured to seek damages from an insurance carrier whose settlement and negotiation practices breach a judicially-created duty of good faith and fair dealing. The Texas Supreme Court first enunciated such a duty in *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987), and first applied it in the workers' compensation context in *Aranda v. Ins. Co. of North America*, 748 S.W.2d 210 (Tex.1988). In both cases, the Texas court stressed that injury caused by a breach of this duty is distinct from that caused by the physical injury to the insured which underlies the claim for compensation. *Aranda*, 748 S.W.2d at 214.

raise only state law issues. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64–66, 107 S.Ct. 1542, 1546–48, 95 L.Ed.2d 55 (1987); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987) (common law contract and tort claims based on non-payments of benefits under an ERISA plan "relate to" an employee benefit plan and are thus preempted although plaintiff did not plead a cause of action provided by ERISA.) ERISA preempts all state laws which relate to employee benefit plans. *See* 29 U.S.C. § 1144(a). However, ERISA also contains a preemption savings clause. It saves from preemption state laws regulating benefit plans which are "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws." 29 U.S.C. § 1003(b)(3).

Determining whether Congress intends to preempt state regulation in a given field requires examination of the extent to which its legislation expressly or implicitly creates total federal occupation of that field. *See Osburn v. Anchor Labs., Inc.*, 825 F.2d 908, 911 (5th Cir.1987), *cert. denied*, 485 U.S. 1009, 108 S.Ct. 1476, 99 L.Ed.2d 705 (1988). Courts determine congressional intent to preempt state law by interpreting the language of the federal statute in question. *See, e.g., Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299–300, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988). *Metropolitan Life* and *Pilot Life* show that the Supreme Court has determined that ERISA is a manifestation of expressly stated congressional intent to occupy totally the field of employee benefits and pension plans. *See Metropolitan Life*, 481 U.S. at 62, 107 S.Ct. at 1545–46; *Pilot Life*, 481 U.S. at 45–46, 107 S.Ct. at 1551–52. However, the Court has also recognized that Congress, by including § 1003(b)(3) within this broadly preemptive statute, sought to reserve to the states some degree of control over their workers' compensation and disability schemes, which are institutions of the states' own creation. *See Shaw v. Delta Air Lines*, 463 U.S. 85, 108, 103 S.Ct. 2890, 2905–06, 77 L.Ed.2d 490 (1983). Concerned that allowing states to regulate employee benefits plans piecemeal would subject employers to inconsistent federal and state regulation, the *Shaw* Court held that only entire plans, rather than parts of plans, maintained solely to comply with state laws are exempted from ERISA's preemption. *See id.* at 107–08, 103 S.Ct. at 2905–06. Nonetheless, Shaw does recognize that Congress intended to preserve the role of state disability laws, foreclosing the argument that ERISA completely decimates states' authority to enforce their own laws in the area of workers', compensation and disability benefits. *See id.* Where a coordinate state regulatory role is recognized by Congress, such recognition must be given effect; just as a court cannot find preemption without clear evidence that Congress so intended, it must also respect evidence that Congress sought to preserve a state role. *California v. Federal Energy Regulatory Comm'n*, 495 U.S. 490, 497, 110 S.Ct. 2024, 2028–29, 109 L.Ed.2d 474 (1990).

In *Foust v. City Ins. Co.*, 704 F.Supp. 752, 753 (W.D.Tex.1989), Fifth Circuit Judge Gee, sitting as a district court by designation, held that ERISA's own language prohibits preemption of a bad-faith claim. The defendant in *Foust* argued, as does Service Lloyds here, that § 1003(b)(3)'s phrase, "solely for the purpose of complying with applicable workers' compensation laws," means that for the preemption savings clause to apply the state laws under review must create a mandatory workers' compensation scheme. Only then, the argument goes, could the employer be said to·have maintained its plan solely to comply with workers' compensation laws. And, since the Texas scheme is not mandatory, no plan funded by a Texas employer could be so maintained. *See id.* at 753. Judge Gee disagreed with this "somewhat awkward" argument, noting that while a Texas employer need not provide workers' compensation insurance, the employer must nonetheless comply with the workers' compensation law of Texas. *See id.* As Judge Gee noted:

> When Mr. Foust's employer decided to go into a business in Texas that required it to hire workers, Texas law confronted it with a choice: limited liability without fault to any worker injured on the job or unlimited liability only in the event of fault but with

no common law defenses. Buying compensation insurance elected the first course; not doing so, the second. The choice to depart the general common-law tort system had already been made by hiring workers. That done, the employer had no choice but to comply with the law, as one who dives from an aircraft must comply with that of gravity—gently by opening his parachute, violently by doing nothing.

*Id.* Thus, the court concluded, whichever choice an employer makes regarding workers' compensation insurance, that choice is made solely to comply with Texas workers' compensation law. *See id.* at 753–54. This position is also taken in *Gibbs v. Service Lloyds Ins. Co.,* 711 F.Supp. 874, 878 (E.D.Tex.1989), *Fears v. Luedke,* 739 F.Supp. 327, 328 (E.D.Tex.1990), and *Olivarez v. Utica Mut. Fire Ins. Co.,* 710 F.Supp. 642, 643 (N.D.Tex.1989), although each of these cases was not decided solely on whether § 1003(b)(3) applied.[2]

Service Lloyds argues that *Foust* is wrongly decided, and thus it and the cases following it should not be considered persuasive. (Def.'s Resp.Mot. Remand at 11–12.) Service Lloyds argues that Judge Gee was operating under the incorrect assumption that Texas law mandates workers' compensation coverage. (Def.'s Resp. at 12.) However, as the above-quoted passage from the *Foust* opinion makes clear, Judge Gee was under no such mistaken belief. This Court has previously cited *Foust* for the proposition that while providing workers' compensation insurance is not mandatory in Texas, complying with the workers' compensation law is. *See*

*Dean v. Texas Steel Co.,* 837 F.Supp. 212, 214 (N.D.Tex.1993).[3] When employers choose not to subscribe to workers' compensation insurance under the Texas system, however, Northern District courts have held that laws creating bad-faith claims against whatever benefit plans *are* maintained by the non-participating employers are preempted.[4]

As noted above, the Supreme Court has held that under § 1003(b)(3) a particular benefit plan would have to be "separately administered" in order to be maintained solely to comply with state workers' compensation or other disability laws. *Shaw,* 463 U.S. at 108, 103 S.Ct. at 2905. The *Shaw* court reasoned that allowing piecemeal state regulation of parts of an otherwise preempted benefits plan would frustrate the intent of ERISA, which it found was to minimize any need for interstate employers to administer their employee benefit plans differently in different states. *See id.* at 105–06, 103 S.Ct. at 2904–05. Thus, the savings clause was held to apply only to plans, and not to parts of plans, so as to limit inconsistent regulation to the greatest extent possible. *See id.* at 107, 103 S.Ct. at 2905. In *Gibbs,* the court found the *Shaw* opinion lacking any useful definition of either the "separately administered" or "solely to comply" language. 711 F.Supp. at 876. Consequently, the court fashioned a three-pronged test based on the requirements of *Shaw* and related decisions. *See Gibbs,* 711 F.Supp. at 879. Under this test, a plan is separately administered if:

> (1) the workmen's compensation insurance is provided through an insurance policy issued by one insurance carrier and all

---

**2.** Many courts which have passed on this issue, whether resolving it in favor of or against remand, cite both a federal removal statute, 28 U.S.C. § 1445(c), and ERISA's workers' compensation exemption. In some cases, it is not clear on precisely which ground the court is basing its decision. *See, e.g., Morrison v. Utica National Ins. Co.,* Civ. A. No. 3–88–1447–T, 1988 WL 156683 (N.D.Tex. Nov. 28, 1988).

**3.** *Dean* did not turn on an application of § 1003(b)(3), but rather dealt with the question of whether a retaliatory discharge claim is removable under 28 U.S.C. § 1445(c) where the employer did not subscribe to a workers' compensation plan, holding that removal was improper. *Dean,* 837 F.Supp. at 214. This Court

found *Foust* analogous, and concurred with Judge Gee's observations about the mandatory nature of compliance with Texas workers' compensation law. *See id.*

**4.** *See Benson v. Wyatt Cafeterias, Inc.,* 780 F.Supp. 1132, 1134 (N.D.Tex.1992) (bad-faith claim against employee benefit plan which compensates injured workers but is not a workers' compensation plan under the Texas Workers' Compensation Act is preempted). *But cf. Pyle v. Beverly Enterprises–Texas, Inc.,* 826 F.Supp. 206, 209 (N.D.Tex.1993) (claim not saved from preemption by "solely to comply" clause where employer did not subscribe to a workers' compensation policy, but had such a policy been in effect *Gibbs* would have precluded ERISA preemption).

other types of insurance are provided through a separate policy, or policies, issued by another insurance carrier or other carriers; (2) the workmen's compensation insurance carrier exercises the sole authority to manage the premium income and funds relating to the workmen's compensation insurance program and to review and approve or deny claims made pursuant to the workmen's compensation insurance policy; and (3) the employer acts as a mere conduit for the transmittal of premiums, forms, and other information between the employees and the separate insurance carriers.

*Id.* Service Lloyds, while urging that *Gibbs* should not be followed because it relies on the flawed holding in *Foust*,[5] alternatively argues that the workers' compensation insurance provided by plaintiff Thurman Walker's employer does not meet the *Gibbs* test for "separately administered plan" and thus cannot fall within the protection of § 1003(b)(3). (Def.'s Resp.Mot. Remand at 12, 13.) Service Lloyds argues, appending an affidavit in support, that James Burke Construction (Walker's employer) retains the right to review and contest workers' compensation claims submitted by its employees, and that the company participates in the decision-making process regarding employees' claims for benefits by providing information relating to the claim to the insurance carrier. (James Burke Aff. ¶ 5, Def.'s Resp. to Mot. to Remand Ex. "E.") Thus, Service Lloyds argues, the plan does not meet the second and third prongs of the *Gibbs* test. (Def.'s Resp. at 13–14.)

The party seeking removal bears the burden of proving removal is proper when challenged by a motion to remand. 14A Wright et al., *supra*, § 3739. The only evidence adduced by either party on the remand issue is the affidavit proffered by Service Lloyds. Thus, Service Lloyds' assertion that removal is proper must stand or fall on the application of the above-stated legal principles to the facts presented in its affidavit. The three-pronged test formulated in

*Gibbs* will be used to determine whether the mandate of *Shaw* has been followed; that is, to gauge whether Defendant's workers' compensation plan is separately administered and maintained solely to comply with Texas workers' compensation law.

Mr. Burke's affidavit does not state that Service Lloyds underwrites insurance for Burke Construction other than the workers' compensation policy. (Burke Aff., Def.'s Resp.Ex. "E.") Thus, Service Lloyds has not met its burden of showing that the first *Gibbs* prong—that the workers' compensation policy be provided by a separate carrier—has not been met. Mr. Burke's affidavit also states that Burke Construction has the right to "review and contest" claims made by employees. *Id.* It does not follow from this, however, that Burke Construction has the right to "approve or deny" claims. "Contesting" is not the same as approving or denying, and nothing in the affidavit suggests that the carrier, Service Lloyds, does not in fact make all relevant decisions relating to claims. Thus, the second prong of *Gibbs* is not met. Finally, the affidavit states that Burke Construction "participates in the decision-making process regarding employees' claims for benefits, and procures and furnishes information to Service Lloyds Insurance Company relating to claims that are submitted." *See id.* The third *Gibbs* prong requires that the employer act as something other than a "mere conduit" for the transfer of premiums, forms and other information between the individual employees and the carrier. 711 F.Supp. at 879. What Burke Construction claims to do sounds like a fair description of what a "mere conduit's" role would be. To the extent that Burke Construction's assertion that it "participates in the decision-making process" is meant to establish that it can independently adjudicate the merits of claims, the assertion is merely a conclusory statement unsupported by facts in the affidavit. *Gibbs* requires more than mere participation; it requires actual control over the disposition of a claim. Just as attorneys arguing before a court could claim to be participating in the decision-making process by supplying the trier

---

5. Even if *Foust* is incorrectly decided, however, *Gibbs* certainly does not rely solely on *Foust* and it would not automatically follow that *Gibbs* is also in error. Of course, that *Foust* is in error is hardly a foregone conclusion.

with evidence and argument, the final decision-making is done by the trier, not the attorneys. Thus, this Court finds that Service Lloyds has not met its burden of showing that the workers' compensation exception to ERISA preemption does not apply and thus have not convinced this Court that removal is appropriate.

■ Although this Court does not believe ERISA preempts the state common-law claims asserted by Plaintiffs, should it be in error, there remains yet another expression of federal deference to states' interest in governing their own workers' compensation schemes which would present a bar to removal of this cause. Federal courts are denied jurisdiction to hear cases "arising under" state workers' compensation laws and brought to federal court by means of removal. 28 U.S.C. § 1445(c). The statute is silent as to the nature of federal jurisdiction which must be alleged by the removing party; thus, it applies to either diversity or federal question cases.

■ District courts within the Fifth Circuit and even within the Northern District of Texas have split on whether § 1445(c) prohibits removal of bad-faith cases. Service Lloyds argues that a bad-faith claim does not "arise under" the workers' compensation laws of Texas and thus can be removed to federal court. (Def.'s Resp.Mot. Remand at 6.) Service Lloyds argues that the Texas Supreme Court decisions which created an insurer's duty of good faith and fair dealing emphasized that an insured should recover in tort when such conduct by the insurer causes an injury independent from that which underlies the insured's claim for benefits. *See id.* Judge McBryde, of the Fort Worth Division of this District, has found this argument persuasive on two occasions. In *Bastain v. Travelers Ins. Co.,* 784 F.Supp. 1253 (N.D.Tex.1992), the plaintiff sought damages from his workers' compensation insurance carrier on theories of negligence as well as violations of the Texas Insurance Code and a common-law bad-faith claim. In denying the

plaintiff's motion to remand, the court held that although the injuries alleged by the plaintiff caused by the insurer's conduct related to the workplace injury made the basis of the plaintiff's compensation claim, the bad-faith tort claim alleged an independent cause of action not created or determined by a provision of the Texas workers' compensation laws. *See id.* at 1258. Therefore, § 1445(c) did not bar removal and the plaintiff's motion to remand was denied. *Id.*[6] The opposite result on comparable facts was reached by Chief Judge Sanders in *Almanza v. Transcontinental Ins. Co.,* 802 F.Supp. 1474 (N.D.Tex.1992). In *Almanza,* the court held that the Texas Supreme Court's declaration that a breach of the duty of good faith and fair dealing gives rise to an injury distinct from that underlying the compensation claim was not dispositive on the issue of whether the tort suit "arises under" Texas workers' compensation law. *See id.* at 1476. Instead, the *Almanza* court found guidance in a Fifth Circuit case, *Jones v. Roadway Express, Inc.,* 931 F.2d 1086 (5th Cir.1991), which held that a retaliatory discharge claim arises under Texas workers' compensation laws. *Almanza,* 802 F.Supp. at 1476. In *Jones,* the Fifth Circuit determined that the term "arising under" in § 1445(c) should be interpreted in the same manner as it is in 28 U.S.C. § 1331, the federal question statute. 931 F.2d at 1092. Accordingly, the *Jones* court applied Justice Holmes's test of federal jurisdiction under § 1331 articulated in *Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 258–60, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916), which provides that a suit arises under the law that creates the cause of action. *Jones,* 931 F.2d at 1092. Noting that modern federal question jurisprudence has found Justice Holmes' formulation too inclusive, Chief Judge Sanders concluded that the *Jones* court was nonetheless able to rely on the more liberal standard because retaliatory discharge is made actionable by Texas workers' compensation statutes and therefore the cause literally arose under Texas workers' compensation law. *Almanza,* 802 F.Supp. at

**6.** The *Bastain* court distinguished *Watson v. Liberty Mut. Fire Ins. Co.,* 715 F.Supp. 797 (W.D.Tex.1989) and *Allsup v. Liberty Mutual Ins. Co.,* 782 F.Supp. 325 (N.D.Tex.1991), both of

which held that § 1445(c) required remand, because the bad-faith claim was combined in those cases with the underlying workers' compensation claim itself. *Bastain,* 784 F.Supp. at 1257–58.

1477, 1479. The *Bastain* court distinguished *Jones* because the bad-faith claim is not a statutory creation. *See Bastain,* 784 F.Supp. at 1257. Although the duty of good faith and fair dealing is not created by statute, as is the cause of action for wrongful discharge, the *Almanza* court concluded that a bad-faith claim is as much a creation of Texas workers' compensation law as is the statutory cause of action:

> While there are elements of common law in the workers' compensation claim duty of good faith and fair dealing, a bad faith claim is contingent upon establishing a valid workers' compensation claim. Therefore, the Texas workers' compensation laws, which create a cause of action for claimants, form an essential ingredient in Almanza's bad faith claim against Transcontinental. Hence, for the purposes of § 1445(c), a bad faith claim against an insurer for its handling of a workers' compensation claim arises under the Texas Workers' Compensation Act.

802 F.Supp. at 1479.

Judge McBryde subsequently had an opportunity to reconsider his holding in *Bastain* in light of *Almanza,* but explicitly stated that he found Chief Judge Sanders's reasoning unpersuasive. *See Warner v. Crum & Forster Commercial Ins. Co.,* 839 F.Supp. 436, 439 (N.D.Tex.1993). In *Warner,* the court observed that the duty of good faith and fair dealing applies generally to every relationship between insurer, insured and beneficiary in Texas, and not exclusively in the workers' compensation context. *See id.* "If the Texas legislature were to codify the duty of good faith and fair dealing, its codification undoubtedly would be with laws pertaining to the obligations of insurers generally, not with workers' compensation laws." *Id.* n. 5. Rather than "arising under" the workers' compensation laws of Texas, the court held, bad-faith claims at best "relate to" those laws. *See id.* The court concluded that had Congress intended that all causes of action "related to" a state's workers' compensation laws be non-removable, it could easily have said so. *See id.*

This Court believes that *Almanza's* treatment of § 1445(c) is the correct one. Congress, in enacting the statute, recognized the essentially local character of workers' compensation cases and displayed concern for the states' interest in administering their own workers' compensation laws. 14A Wright et al., *supra,* § 3729. The Fifth Circuit has held that § 1445(c) reflects a congressional policy that "where a state court has been utilized by one of the parties in the state compensation machinery, the case should remain in the state court for its final disposition." *See Kay v. Home Indemnity Co.,* 337 F.2d 898, 902 (5th Cir.1964). Although the duty of good faith and fair dealing is indeed equally applicable to all insurance carriers, Texas courts have nonetheless created a standard by which the processing of workers' compensation claims is to be judged. This Court believes that Congress intended to prohibit removal of claims alleging that states' standards of conduct for workers' compensation carriers have been breached just as surely as it intended to bar the underlying claims from federal courts. To not so hold would create an almost laughable anomaly: the original workers' compensation claim would not be removable but the bad-faith claim, though dependent upon it, would be. The state courts would hear the compensation claim, the federal courts the claim for bad-faith denial of it. This Court can find no compelling federal interest in exercising jurisdiction over bad-faith claims arising out of workers' compensation disputes that would justify such a facially irrational result.

As a last gasp, Service Lloyds argues that § 1445(c) was intended to apply only in diversity cases. (Def.'s Resp.Mot. Remand at 7). As authority for this proposition, it cites *Guthrie v. Dow Chemical Co.,* 445 F.Supp. 311, 313 (S.D.Tex.1978). In *Guthrie,* the court reviewed the congressional history of § 1445(c) and determined, based on the fact that the statute was enacted before ERISA, that Congress must have intended to prevent removal of workers' compensation-related cases only on diversity grounds. *See id.* It is interesting to note, however, that this same congressional history was cited in *Olivarez* to support exactly the opposite conclusion. 710 F.Supp. at 643. "Had Congress

**1170**

intended to limit the application of § 1445(c) to diversity actions, it could have written the statute that way." *Id.* Section 1445(c) is an expression of Congress' deference to states in the area of workers' compensation, a deference continued when ERISA was enacted. Removal of this cause is barred by § 1445(c).

Because this Court has determined that it has no jurisdiction over the claim, it would be futile to delay the proceedings further by granting a stay pending the outcome of the underlying claim for benefits, as Service Lloyds has requested. The state district court is the forum in which the appropriateness of such a stay should be determined.

For the foregoing reasons, it is hereby ORDERED that this cause be remanded to the 271st Judicial District Court in Wise County, Texas. It is further ORDERED that the clerk of Court mail a certified copy of this order of remand to the clerk of said state district court.

SO ORDERED.