**Wanda GUILBEAUX, Plaintiff,**

v.

**3927 FOUNDATION, INC., Defendant.**

**No. 1:97–CV–349.**

United States District Court,
E.D. Texas,
Beaumont Division.

Jan. 19, 1998.

Thomas M DeWitt, Tom Stickler, Alvin, TX, for plaintiff.

Lisa H Pennington, Sandra H Wotiz, Baker & Hostetler, Houston, TX, for defendant.

*MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO STRIKE, GRANTING DEFENDANT'S 12(b)(6) MOTION TO DISMISS, AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND*

SCHELL, Chief Judge.

This matter is before the court on Defendant 3927 Foundation's ("the Foundation")

Motion to Dismiss, filed on October 30, 1997. Plaintiff Wanda Guilbeaux ("Guilbeaux") filed a response on November 26, 1997, which included an alternative motion for leave to amend the pleadings if the Foundation's motion was granted. On December 3, 1997, the Foundation filed a Motion to Strike Plaintiff's Response to Defendant's 12(b)(6) Motion as Untimely. Guilbeaux filed a response to the Foundation's Motion to Strike on December 5, 1997.

After consideration of the motions, responses, and applicable law, the court is of the opinion that Defendant's Motion to Strike Plaintiff's Response to Defendant's 12(b)(6) Motion as Untimely should be DENIED, Defendant's 12(b)(6) Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted should be GRANTED, and Plaintiff's alternative Motion for Leave to Amend should be GRANTED.

## I. Factual Background

The Foundation owns the Changing Seasons Nursing Home ("Changing Seasons"). Plaintiff Wanda Guilbeaux was employed by the Foundation as a nurse's aide at Changing Seasons on May 6, 1995. Pl.'s Am. Comp. at 1, ¶ 5. On that date, Guilbeaux allegedly injured her back while attending to a patient. *Id.* at 1, ¶ 6. She reported the injury to a supervisor, who instructed Guilbeaux to obtain medical treatment for her injury under Changing Season's no-fault employee benefit plan (the "Plan").[1] Guilbeaux obtained that initial treatment, as well as additional treatment. The additional treatment was allegedly unauthorized. According to Guilbeaux, Changing Seasons has refused to pay for any medical services. *Id.* at 2, ¶ 11.

Guilbeaux originally sued in state court on December 19, 1995, alleging negligence and gross negligence on the part of the Foundation. The Foundation answered on March 7, 1996. Over one year later, on June 11, 1997, Guilbeaux filed an amended petition that omitted the negligence and gross negligence claims. Pursuant to her Amended Petition, Guilbeaux brought two new causes of action:

(1) breach of contract and (2) breach of good faith and fair dealing. *Id.* at 2, ¶¶ 9–10.

The Foundation removed the case to this court on June 25, 1997, alleging that Guilbeaux's claims are based on the alleged breach of an employee benefit plan as defined under the Employee Retirement Income Security Act of 1974 ("ERISA"), § 514(a). The Foundation claims federal question and preemptive jurisdiction through 28 U.S.C. § 1331 and 29 U.S.C. § 1144(a), respectively. Def.'s Notice of Removal at 2, ¶ 4.

## II. Motion to Strike

As a threshold matter, it is appropriate to determine whether the court will consider Guilbeaux's response when deciding the Foundation's Motion to Dismiss. Guilbeaux's Response to the Foundation's Motion to Dismiss was untimely. Consequently, the Foundation filed a Motion to Strike Guilbeaux's response as untimely under Local Rule CV–7(d). Def.'s Mot. to Strike at 1–2. Guilbeaux filed a response to the Foundation's Motion to Strike, arguing that even though her response to the Motion to Dismiss was late, the court should accept the response because the Foundation was not prejudiced by the late filing. Pl.'s Resp. to Def.'s Mot. to Strike at 1.

Local Rule CV–7(d) requires that all responses to motions be in accordance with the timetable set out in Local Rule CV–7(e). E.D.Tex.Local.R. CV–7(d). Local Rule CV–7(e) states, in relevant part: "A party opposing a motion has 10 days in which to serve and file supporting documents and briefs after which the court will consider the submitted motion for decision." *Id.* CV–7(e). The court construes this provision to mean that a motion is ripe for consideration after ten days. If no response has been received by that time, the court may assume that the motion is unopposed and may issue a ruling. *Id.* CV–7(d). If the court has not yet considered a motion, however, and a response is filed after the ten day period, the court can still consider the response at its discretion.

---

**1.** The Plan is identified as the Summary Plan Description for 3927 Foundation, Inc. and Affiliates Employee Injury Prevention and Injury Ben-

efit Plan. Def.'s Notice of Removal at 2, ¶ 3. A copy of the Plan was not provided to the court.

*See Callip v. Harris County Child Welfare Dept.,* 757 F.2d 1513, 1516–17 (5th Cir.1985); *Honea v. SGS Control Services, Inc.,* 859 F.Supp. 1025, 1031–32 (E.D.Tex.1994); *Union Exploration Partners, Ltd. v. AmSouth Bank,* 718 F.Supp. 552, 553 n. 1 (S.D.Miss. 1989).

■ Here, Guilbeaux's response was filed ten days after it was due. However, the Foundation has not alleged or proven that it would suffer prejudice if the court entertained Guilbeaux's response. The court does not condone missing deadlines set by the local rules, and under certain circumstances a motion to strike would be considered. Nevertheless, the court is not convinced that, under these facts, Guilbeaux's response was so late as to require the court to strike it from consideration. Accordingly, the Foundation's Motion to Strike is DENIED.

### III. Motion To Dismiss

*A. Standard for 12(b)(6) Motion to Dismiss*

■ Rule 12(b)(6) provides that a party may move a court to dismiss an action for "failure to state a claim upon which relief can be granted." On motion under Rule 12(b)(6), the court must decide whether the facts alleged, if true, would entitle the plaintiff to some legal remedy. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Dismissal is proper only if there is either (1) "the lack of a cognizable legal theory" or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990). Unless a Rule 12(b)(6) motion is converted to a summary judgment motion, the court cannot consider material outside the complaint. *See Powe v. Chicago,* 664 F.2d 639, 642 (7th Cir.1981); *see also Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1017 (5th Cir.1996) (considering documents either attached to or incorporated in the complaint as part of the complaint for 12(b)(6) purposes). The court also may "consider matters of which [it] may take judicial notice." *Lovelace,* 78 F.3d at 1017–18; Fed. R.Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding."). The court must accept as true all material allegations in the complaint as well as any reasonable infer-

ences to be drawn from them. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982). The well-pleaded facts must be reviewed in the light most favorable to the plaintiff. *Piotrowski v. City of Houston,* 51 F.3d 512, 514 (5th Cir.1995). A plaintiff, however, must allege specific facts, not conclusory allegations. *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989). Conclusory allegations and unwarranted deductions of fact are not admitted as true. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).

A pleading, however, "need not specify in exact detail every possible theory of recovery—it must only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Thrift v. Estate of Hubbard,* 44 F.3d 348, 356 (5th Cir.1995) (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. at 102–03). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02; *Kaiser Aluminum,* 677 F.2d at 1050. "'The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'" *Id.* at 1050 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1969)).

"[Rule 12(b)(6)] must be read in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim in federal court and calls for 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Wright & Miller, *supra,* § 1356; *see also Thrift,* 44 F.3d at 356 n. 13. "[T]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim ." *Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 386 (5th Cir.1985). "Rule 8 fosters that policy by sweeping aside the hypertechnical pleading rules that once defeated many an unwary but meritorious claimant." *Id.* "A plaintiff's complaint ordinarily need only be a short and plain statement that gives the defendant notice of what the claim is and the grounds upon which it rests." *Colle v. Brazos County,* 981 F.2d

237, 243 (5th Cir.1993). "Rule 8 indicates that a complaint need only set out a generalized statement of facts from which defendant will be able to frame a responsive pleading." WRIGHT & MILLER, *supra*, § 1357. "However, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery. . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1995) (quoting 3 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1216 at 156–159).

### B. The Parties' Contentions

The Foundation moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The motion is based on two grounds. First, the Foundation claims that Guilbeaux's state law breach of contract claim is preempted by federal law, since that claim "relates to" a benefit plan under ERISA. Def.'s Mot. to Dismiss at 2. Second, the Foundation claims that Guilbeaux's state law breach of good faith and fair dealing claim should be dismissed because Texas has never recognized a duty of good faith and fair dealing between employer and employee. *Id.* at 3. Therefore, there is no claim to be preempted, and dismissal is appropriate because Guilbeaux's cause of action does not state a claim upon which relief can be granted. *Id.* at 5.

Guilbeaux does not dispute that the Plan would normally fall under the auspices of ERISA, or that her state law claims are preempted. Instead, she argues that an exception to ERISA preemption applies in this case. Pl.'s Resp. To Def.'s Mot. to Dismiss at 2. Guilbeaux points out that 29 U.S.C. § 1003(b)(3) expressly states that ERISA preemption does not apply to an employee benefit plan if the plan is maintained solely for the purposes of complying with applicable state workers' compensation laws. *Id.*

In her argument, Guilbeaux does not allege that the Foundation is a subscriber under the Texas workers' compensation plan. Instead, she argues that the Foundation instituted the Plan in order to comply with the Texas Worker's Compensation Act ("TWCA"), which is "set up to provide compensation for injuries sustained by an employee in the course and scope of employment." *Id.* According to Guilbeaux, the Foundation was acting as a workers' compensation carrier, and "[f]ailure to prove that the plan was instituted for reasons other than the compliance with the Texas worker's compensation laws prevents ERISA preemption." *Id.*

As to her second claim, Guilbeaux argues that the Texas Supreme Court has held that workers' compensation carriers owe a duty of good faith and fair dealing to injured employees. *Id.* at 1–2 (citing *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 212–13 (Tex.1988)). Since the Foundation was acting as its own workers' compensation insurer in funding the Plan, it owes the same duty to its employees. *Id.* at 2.

### C. Analysis

■ "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983)). ERISA details a comprehensive system by which state law claims for interference with employee benefits can be preempted by the statute. *Id.* (discussing the manner in which §§ 514(a), 510, and 502(a)preempt state law causes of action for denying benefits under an ERISA plan). The determination of whether ERISA preempts a state law claim requires a two-part inquiry. First, the factfinder must determine whether the benefit plan at issue constitutes an ERISA plan and, if so, whether one of ERISA's savings clauses would preclude preemption. Second, if the plan is an ERISA plan, the fact-finder must then determine whether the state law claims "relate to" to the plan. *Id.* at 138–140, 111 S.Ct. at 482–84.

#### 1. Is the benefit plan at issue an ERISA plan?

■ The existence of an ERISA plan is a question of fact. *McDonald v. Provident*

*Indem. Life Ins. Co.,* 60 F.3d 234, 235 (5th Cir.1995), *cert. denied,* 516 U.S. 1174, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996). "ERISA applies to any employee benefit plan if it is established or maintained by an employer or an employee organization engaged in commerce or in any industry or activity affecting commerce." *Memorial Hosp. System v. Northbrook Life Ins. Co.,* 904 F.2d 236, 240 (5th Cir.1990). An employee benefit plan is defined under ERISA as:

> any plan, fund, or program which was … established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise … medical, surgical, or hospital care or benefits, or benefits in the event of … accident.

29 U.S.C. § 1002(1). A plan falls under ERISA "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Memorial Hosp. System,* 904 F.2d at 240 (quoting *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982)). Moreover, the plan cannot fall under one of ERISA's safe-harbor provisions. *McDonald,* 60 F.3d at 236.

In the present case, Guilbeaux admits there was an insurance policy in effect that covered the Foundation's employees, that the policy's purpose was to compensate employees of the Foundation for on-the-job injuries, and that the Foundation financed the policy. *See* Pl.'s First Am.Orig.Pet. at 1–2, ¶ 7 ("Defendant provides plaintiff with a no-fault policy of insurance that covers medical expenses related to injuries that occur in the course and scope of the employee's job. This policy was in effect at the time Mrs. Guilbeaux was injured and she qualified for the benefits the policy afforded.") Guilbeaux also admits that she has "met all conditions precedent to making a claim for benefits" under the policy. Pl.'s First Am.Pet. at 2, ¶ 8. From the face of Guilbeaux's complaint, it appears that the Foundation's Plan qualifies as an ERISA plan since the surrounding circumstances indicate that a reasonable person could ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits. *See Memorial Hosp. System, supra.*

But Guilbeaux argues that the Plan is exempt from ERISA under a safe-harbor provision exempting plans "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws." 29 U.S.C. § 1003(b)(3). According to Guilbeaux, the Plan's sole purpose is to comply with the TWCA, and the Foundation must prove that the Plan was instituted for reasons other than worker's compensation compliance. Guilbeaux maintains that if the Foundation fails to do so, then ERISA does not preempt causes of action brought under the Plan. Pl.'s Resp. to Def.'s Mot. to Dismiss at 2 (citing *Walker v. Health Benefit Management Cost Containment, Inc.,* 860 F.Supp. 1163, 1167 (N.D.Tex.1994)).

In *Walker v. Health Benefit Management Cost Containment,* 860 F.Supp. 1163, 1165 (N.D.Tex.1994), the court noted that subscription to workers' compensation insurance is not mandatory under the TWCA. The *Walker* court found that an employer can choose limited liability under a workers' compensation scheme by subscribing, or the employer can take the risk of unlimited liability in the event of fault, but with no common law defenses. *Id.* at 1165–66 (quoting *Foust v. City Ins. Co.,* 704 F.Supp. 752, 753 (W.D.Tex. 1989)). "[W]hichever choice an employer makes regarding workers' compensation insurance, that choice is made solely to comply with Texas workers' compensation laws." *Id.* at 1166.

Therefore, according to *Walker,* any plan designed and maintained to compensate injured workers for on-the-job injuries is "maintained solely for the purpose of complying with applicable workmen's compensation law or unemployment compensation or disability insurance laws" under § 1003(b)(3), and it does not matter whether the employer is a subscriber to workers' compensation or a nonsubscriber. *See id.* at 1165–1166; *see also Foust,* 704 F.Supp. at 753–54. Even if

an employer chooses not to subscribe, "the employer must nonetheless comply with the workers' compensation law of Texas," and an employee benefit plan instituted for on-the-job injuries can qualify for § 1003(b)(3) provided that the plan is "separately administered." *Walker,* 860 F.Supp. at 1165.

Other courts disagree with *Walker* and *Foust,* however, as to the applicability of § 1003(b)(3) to a non-subscriber. *See Pyle v. Beverly Enterprises–Texas, Inc.,* 826 F.Supp. 206, 209 (N.D.Tex.1993); *Diaz v. Texas Health Enters., Inc.,* 822 F.Supp. 1258, 1259 (W.D.Tex.1993) (finding an ERISA plan where the employer is a non-subscriber); *see also Nunez v. Wyatt Cafeterias, Inc.,* 771 F.Supp. 165, 167 (N.D.Tex.1991) (assuming a non-subscribing employee injury benefit plan falls under ERISA); *Eurine v. Wyatt Cafeterias,* Inc., 1991 WL 207468 at *2 (N.D.Tex., Aug. 21, 1991) (non-subscriber plan does not arise under TWCA for the purposes of 28 U.S.C. § 1445). These courts also note that Texas does not have a mandatory workers' compensation scheme: employers can either choose to subscribe or not. But if an employer chooses not to subscribe, the employer exists outside of the workers' compensation laws altogether. *See Pyle,* 826 F.Supp. at 209.

For example, in *Pyle,* a case very similar to the instant facts, the plaintiff brought suit against her employer for injuries incurred in a slip and fall while the plaintiff was working as a nurse's aide. *Id.* at 208. She contended, as does Guilbeaux, that the injury occurred during the course and scope of her employment. *Id.* The employer, Beverly Enterprises, was a non-subscribing employer under the TWCA. *Id.* Instead of carrying a workers' compensation insurance policy, Beverly maintained an "Associate Injury Benefit Plan," which provided to employees necessary medical care and treatment for occupational injury or illnesses. *Id.* The *Pyle* court held that a non-subscribing employer who maintained an employee benefit plan to compensate employees for injuries sustained in the course and scope of their employment did *not* maintain the program "solely for the purpose of complying with applicable workers' compensation laws." *Id.* at 209. Ac-

cording to the court, the exemption under § 1003(b)(3) did not apply to a non-subscribing employer. A non-subscribing plan designed to compensate employees for injuries sustained in the course and scope of their employment was an ERISA plan. *Id.* at 209–10.

The court finds the reasoning of *Pyle,* and the cases cited therein, more persuasive than *Walker* and *Foust.* If the Foundation had decided to obtain a workers' compensation insurance policy, and if the Plan was separately administered, ERISA would not preempt Guilbeaux's state law claims against the Foundation because of 29 U.S.C. § 1003(b)(3). *See Gibbs v. Service Lloyds Ins. Co.,* 711 F.Supp. 874, 878–79 (E.D.Tex. 1989). But the Foundation did not purchase a workers' compensation insurance policy. Instead, the Foundation chose to adopt its own, self-funded plan. Texas law does not require that the Foundation subscribe under the TWCA. For that reason, as a matter of law the Plan was not maintained ... "'solely for the purpose of complying with' the TWCA." *Pyle,* 826 F.Supp. at 209.

The court rejects Guilbeaux's argument, relying on *Walker* and *Foust,* that when an employer establishes a self-funded plan, that the plan is also made "solely to comply" with Texas' workers' compensation laws. *See* 29 U.S.C. § 1003(b)(3). The court is of the opinion that *Walker* and *Foust* expand § 1003(b)(3) beyond its intended meaning. The exemption to preemption contained in § 1003(b)(3) is intended to allow states to control their respective workers' compensation schemes, and to prevent a single plan from being subject to inconsistent state and federal regulations. *Walker,* 860 F.Supp. at 1165; *Gibbs,* 711 F.Supp. at 879; *Foust,* 704 F.Supp. at 753 n. 2. If an employer is allowed to operate outside of the workers' compensation system, as employers in Texas are allowed to do, claims against those employers are left to the courts. Thus, the State of Texas has fashioned its workers' compensation scheme in such a way as to forgo control over injury or disability claims lodged against non-subscribing employers. Since Congress' intention in crafting the § 1003(b)(3) exemption was to allow states to

keep control over their workers' compensation systems, it does not apply where a state voluntarily cedes control over certain plans by allowing employers to exist outside of the workers' compensation system. There is no longer any interest of the state to protect, since the state's workers' compensation system does not have control over non-subscribing employers.

In this case, the Foundation was a non-subscribing employer. Thus, under Texas law, the Foundation existed outside of the Texas workers' compensation program. The purpose of 29 U.S.C. § 1003(b)(3) is to protect a state's interest in maintaining control over its own workers' compensation system. When a state allows employers to opt out of that system, it voluntarily cedes control over the plans maintained by the non-subscribing employers. Therefore, the justification for § 1003(b)(3) is no longer viable. Accordingly, the court finds that a non-subscribing employer maintaining a plan for injuries incurred in the course and scope of employment does not fall under 29 U.S.C. § 1003(b)(3), so long as state law allows the employer to be a non-subscriber. Therefore, since the Plan is not covered by an applicable savings clause and, from the face of the complaint, fulfills all of the *Memorial Hospital System* criteria for an ERISA plan, the Plan falls under the scope of ERISA.[2]

### 2. Do the plaintiff's claims relate to an ERISA Plan?

 Once it is established that the Plan qualifies under ERISA, the next analysis is whether the state law claims "relate to" an ERISA plan. *See Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138–40, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990). If the state law claims relate to an ERISA plan, such claims are preempted by ERISA. The question of whether state law claims relate to an ERISA plan should be read expansively. *Id.*

Guilbeaux has claimed damages for breach of contract and breach of the duty of good faith and fair dealing. Pl.'s First Am.Pet. at 2, ¶¶ 9–10. In *Hogan v. Kraft Foods*, 969 F.2d 142, 144–45 (5th Cir.1992), the Fifth Circuit held that both of these causes of action relate to an ERISA plan in such a way as to be preempted. *See id.* at 145.

The Foundation argues that, under Texas law, there is no duty of good faith and fair dealing between an employer and an employee. Def.'s Mot. To Dismiss at 2. Therefore, the issue of preemption need not be reached if no claim exists. *Id.* However, deciding whether such a claim exists under state law would be unnecessary because, even if the claim exists, it is preempted under *Hogan. See Hogan*, 969 F.2d at 145. Accordingly the state law claims are preempted and Defendant's Motion to Dismiss the state law claims is hereby GRANTED.

### IV. PLAINTIFF'S ALTERNATIVE MOTION TO AMEND

 Where responsive pleadings have already been filed, a party "may amend [a] pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." FED.R.CIV.P. 15(a). The decision whether justice requires amendment is committed to the discretion of the district judge, and is reversible only for an abuse of discretion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117, 121 (5th Cir.1982) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971)); *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1024 (5th Cir.1981); *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir.1981). In determining whether to grant leave to amend, the district court "may consider such factors as prejudice to the opposing party, undue delay, repeated failure to cure deficiencies with prior amendment, bad faith, dilatory motive and futility of amendment."

---

2. Because the court finds that the Plan was not instituted "solely to comply" with the Texas workers' compensation laws, there is no need to reach the second question in a § 1003(b)(3) analysis, specifically, whether the Plan was "separately administered." *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 107–08, 103 S.Ct. 2890, 2905–06, 77 L.Ed.2d 490 (1983); *see also Gibbs v. Service Lloyds Ins. Co.*, 711 F.Supp. 874, 878–79 (E.D.Tex.1989) (plan must be both "maintained solely to comply" with workers' compensation laws *and* "separately administered" in order to qualify for § 1003(b)(3)).

*Union Planters,* 687 F.2d at 121; *see also Southern Constructors Group v. Dynalectric Co.,* 2 F.3d 606, 611 (5th Cir.1993) (Rule 15 evinces a bias in favor of granting leave to amend).

■ As stated above, Guilbeaux included the alternative motion to amend in her response to the Foundation's Motion to Dismiss. The Foundation did not respond to Plaintiff's motion. Under the local rules, where no response to a motion is filed, the court can assume there is no opposition. E.D.TEX. LOCAL R. CV–7(d). Granting leave to amend will occasion some delay on a case that was originally filed in state court on December 19, 1995. However, the case did not become removable until June 11, 1997,[3] when Guilbeaux filed an Amended Petition alleging breach of contract and breach of a duty of good faith and fair dealing. That amended petition indicated to the Foundation that the action was removable under ERISA's preemption provision. Def.'s Notice of Removal at 1, ¶ 2; Pl.'s Am.Pet. at 2, ¶¶ 9–10.

The ERISA jurisdiction was not evident until Guilbeaux filed her Amended Petition, and the Foundation immediately removed the case to federal court accordingly. There is no evidence of any bad faith or dilatory motive on the part of Guilbeaux in waiting so long to amend, nor does the Foundation allege that Guilbeaux had any dilatory intentions. Finally, the Docket Control Order entered in this case allows such a motion to be filed until January 15, 1998, and Guilbeaux's motion was filed on November 26, 1997.

In order to determine the proper claims and rights of the parties in this action, an amended pleading is necessary. Therefore, Guilbeaux's alternative motion to amend her pleadings is hereby GRANTED. It is ORDERED that Guilbeaux file an amended complaint by February 2, 1998. It is further ORDERED that Guilbeaux specifically allege her claims under ERISA, the jurisdictional facts supporting each claim, and the facts supporting the merits of each claim. If available, a copy of the Foundation's Plan should be attached to the amended complaint.

## V. CONCLUSION

Accordingly, for the reasons stated above, Defendant's Motion to Strike is hereby DENIED. Further, Defendant's motion to dismiss the state law claims of breach of contract and breach of the defendant's duty of good faith and fair dealing is hereby GRANTED. Finally, the court GRANTS Plaintiff's motion for leave to file an amended pleading. Plaintiff shall have until February 2, 1998, to file an Amended Complaint and to serve Defendant with a copy. It is so ORDERED.

---

**3.** The Foundation received notice on June 9, 1997, when Guilbeaux faxed a copy of her Amended Petition to the Foundation. According to the file stamp of the Orange County Clerk's Office, however, the amended petition was not filed until June 11, 1997.